# COURT OF ERRORS AND APPEALS

OF THE

# STATE OF NEW JERSEY,

## ON APPEAL FROM THE COURT OF CHANCERY,

### AT NOVEMBER TERM, 1855.

Between ABEL YOUNG, appellant, and JOHN RODMAN PAUL, respondent.

The complainant applied to the defendant to purchase his farm. After some negotiation, it was agreed between them, that if the complainant would purchase the Butz farm, the defendant would exchange his farm for the Butz farm and a thousand dollars. At the request of complainant, defendant went to consult his wife and family; and on returning, said they would all assent to the arrangement. Complainant then purchased the Butz farm; and being obliged to leave, authorized his brother, as agent for him, to enter into a written agreement with defendant for the exchange of farms. The agreement was executed, by which it was agreed that complainant should convey, free and clear of all encumbrances, the Butz farm to the defendant, and that, on the same day, defendant should convey his farm to complainant; and complainant agreed to pay the difference of one thousand dollars; the wife expressed herself satisfied with the agreement. At the time appointed, complainant tendered his deed, signed by himself and wife, with full covenants, and the defendant tendered a deed not signed by his wife.

*Held,* that as the refusal of the wife to unite with her husband in the conveyance was owing entirely to the contrivance and fraud of the defendant, who in this way was endeavoring to deprive the complainant of the benefit of a specific performance of the contract, that the court should order the

2 L*

agreement performed, and the conveyances to be so made between the parties that the complainant may hold in the land which *he* conveys an indemnity against any future claim to be set up by defendant's wife.

It was objected that the wife was not a party to the bill, and that no decree could be made against her to execute the deed, as she was not a party. But the Chancellor said no decree could be made against her, if she were a party. If she had actually signed the agreement with her husband, it would have been void as to her.

A *feme covert* cannot make any contract, except as to her separate estate. Had the wife been made a defendant, a demurrer, as to her, would have been sustained.

It was further said, that the deed tendered was a substantial compliance with the agreement, because it contained a covenant to indemnify the complainant; but it was held that no court would say that a mere personal covenant was sufficient indemnity.

A want of mutuality in the contract was urged as an objection against the decree, that the agent who signed for the complainant was not legally authorized; but it is no legal unyielding obstacle to the court's making a decree, that the contract is signed only by one of the parties.

It was argued that the decree would in effect force the wife into executing the deed, which should be her free and voluntary act. The Chancellor said, "Upon a careful examination of all the authorities, if the alternative were presented to me of making a decree for specific performance by procuring the wife to join in the deed, or to dismiss the bill, I should accept the latter."

The power of the court to direct indemnity in such a case cannot be denied; it is the proper and natural mode of administering equity between the parties.

Cases where the wife's refusal to join was *bona fide,* and not the result of the husband's interference, or cases where an action for damages would give adequate redress, are not within the ruling of this case, by RYERSON, J.

The controlling equity of the case is, that upon the faith of his agreement with Young, complainant was drawn into the purchase of the Butz farm, and was thus placed in a position from which he could not extricate himself. He bought the farm not for himself, but for Mr. Young. POTTS, J.

The bill alleges that Abel Young, the defendant, is the owner of a farm, supposed to contain one hundred and seven acres, situated in the township of Oxford, in the county of Warren, in the state of New Jersey; that on or about the 14th of December, 1854, the complainant applied to him to purchase his farm; and that, after some negotiation, it was agreed between them, that if the complainant would purchase of J. Elias Butz his farm, of about the same number of acres, the defendant would exchange his farm

for the Butz farm and a thousand dollars difference; that at the request of the complainant, the defendant went to consult his wife and family, and, on returning, said they would all assent to the arrangement; that the complainant then went and purchased the Butz farm; and being obliged to leave immediately for his home in Philadelphia, he authorized his brother, as agent for him, to enter into a written agreement with the defendant for the exchange of farms; that his brother, as his agent, and the said defendant on the same day, executed an agreement in writing, by which it was agreed, that on the first day of April, the said complainant should convey, free and clear of all encumbrance, the Butz farm to the defendant, and that on the same day the said defendant should convey to the complainant the said farm then owned and occupied by the said defendant; and further, that the said difference in exchange should be $1000, which the said complainant agreed to pay to the defendant. The bill alleges that the wife of the defendant expressed herself satisfied with the agreement; that on the first of April, the complainant was ready on his part to fulfil the agreement, and tendered to the defendant a deed for the Butz farm, signed by himself and wife with full covenants; and that, on the same day, the defendant tendered to the complainant a deed for his farm, but that the deed was not signed by the wife; that the defendant pretended his wife could not execute the deed; that the complainant then offered to take the deed without the wife's joining in the conveyance, provided the defendant would indemnify him on the Butz farm against any claim of dower which the wife of the defendant might be entitled to hereafter, or by giving him other satisfactory security.

The bill prays that the said defendant may be decreed specifically to perform the said agreement by a proper conveyance with his wife, or that he be decreed to make compensation for the value of the wife's encumbrance, to be deducted from the purchase money; or, if more agree-

able to equity, that the covenants of the defendant for encumbrances be declared a lien on the Butz farm, as an indemnity against any right or claim of dower which may hereafter be made by the defendant's wife.

The defendant answered the bill, and depositions were taken by both parties.

The defence set up will appear fully by the opinion of the Chancellor.

The cause was argued in the Court of Chancery, by *P. Kennedy* and *W. L. Dayton*, for the complainant, and *J. H. Norton* and *James S. Nevius* for defendant.

At the term of February, 1855, a decree was made in favor of the complainant. From this decree an appeal was taken. The Chancellor furnished the court with the following opinion, as containing the reasons for his decree :

THE CHANCELLOR. There are several grounds upon which the defendant resists a decree for specific performance. I shall notice them in the order in which they were presented on the argument.

1. It is objected that the wife is not a party to the bill, and that no decree can be made against her to execute the deed, as she is not a party to the suit. No decree could be made against her if she were a party. If she had actually signed the agreement with her husband, it would have been absolutely void as to her, and no suit at law or equity could be maintained against her upon such an agreement. A *feme covert* cannot make any contract, either with or without the consent of her husband, except as to her separate estate, in respect either to real or personal property. Our late statutes respecting the rights of married women do not affect this principle of the common law. Had she been made a defendant, a demurrer as to her would have been sustained. *Worden et al* v

*Morris and Wife* (2 *G. C. R.* 66) ; 2 *Kent* 141 ; 12 *Mad. Ch.* 261 ; 6 *Wend.* 13 ; 2 *Jac. & Walk.* 412.   The necessary and proper parties are therefore before the court.

2. That the defendant, on the day specified in the agreement, was ready to perform it, and tendered to the complainant a deed for his farm, which the complainant refused to accept.   The defendant was bound to give to the complainant a deed for the farm, free and clear of all encumbrance.   The complainant was entitled to a deed executed by the defendant *and his wife*.   A deed executed by the defendant alone was not a compliance with the agreement.   The complainant was not bound to take such a deed.   This was the deed which was tendered to him. But it was argued that the defendant run no risk by taking such a deed ; that this being a mere exchange of properties, a court of equity would not, under the circumstances, ever have permitted the wife to claim her dower in both properties.   But why not ?   The court could not, upon any principle of equity, prevent her taking her dower in the land conveyed by her husband to the complainant.   It is that very right which she is now maintaining, and which it is contended this court has no right to impair by a decree against her in this case.   Suppose she claimed her dower, too, in the land conveyed by this complainant to her husband.   That would be a question between her and the heirs at law of her husband, in which this complainant could have no possible interest ; and it is difficult to conceive how any legal or equitable resistance could be made to such a claim by reason of anything connected with this transaction.   It was further said, that the deed was a substantial compliance with the agreement, because it contained a covenant to indemnify the complainant against any future claim the wife might make ; and it is shown that the defendant is a man of property, and his personal covenant a sufficient indemnity. This is no answer to the objection to such a deed.   The complainant offers to take a sufficient indemnity, but no

court would say that the mere personal covenant was sufficient indemnity against such an encumbrance.

3. A want of mutuality in the contract, is urged as an objection against a decree. It is said, the agent who signed the contract for the complainant was not legally authorized, and so the defendant only was bound by it; and as the defendant could not, for that reason, compel a specific performance by the complainant, the parties were not mutually bound, and that in such a case a court of equity will not decree a specific performance. There is some conflict of authority upon this point. It was considered by the court in the case of *Lanning* v. *Cole* (3 *G. C. R.* 229), and some of the authorities are there referred to by the Chancellor. It is evident his leaning was against the objection. He did not decide the point, however, as the case turned upon the other considerations. Most of the authorities on the point are referred to and reviewed by the master of the rolls in *Morris* v. *Mitchell*, (2 *Jac. & Walk.* 425). The opinion of the *master of the rolls* in that case is unsatisfactory. It is not referred to by Chancellor Kent in *Benedict* v. *Lynch* (1 *J. C. R.* 373), although much later than any of the authorities referred to by him. The contract is undoubtedly binding on the defendant at law; and if the court refuses to compel a specific performance, it is simply on the ground that the want of mutuality renders it more equitable that the party should be left to his legal remedy.

It is no legal unyielding obstacle to the court's making a decree, that the contract is signed only by one of the parties. In that sound legal discretion, by which a court of equity exercises this branch of its jurisdiction, it frequently does refuse to decree a specific performance of a contract which is not mutually binding on both parties; not, however, because it is a settled principle that the court will not enforce such a contract, but because that want of mutuality often constitutes an equitable ground for such refusal, as if the party not signing the agree-

ment, and therefore not legally bound, takes advantage of his position, and delays its fulfilment till it is ascertained whether the bargain is advantageous to him. Now, though the performance of the contract, if he had been bound, could not have been resisted by reason of the delay, yet the court will now consider it good ground enough by reason of the want of mutuality in the contract. But even admitting that, as a general rule, the objection is a good one, there are circumstances in this case which would make it inequitable and oppressive on the complainant for the court to enforce it. It is proved, and indeed admitted by the answer, that the complainant purchased the *Butz* farm for the sole purpose of carrying out this contract, and that he was encouraged and urged by the defendant to make the purchase. He has made a large expenditure there, relying upon the good faith of the defendant. To turn him over to the law under these circumstances would not only give him an inadequate remedy, but be permitting the defendant to practice a fraud upon him. The naked question is not therefore presented in this case, whether a want of mutuality is a valid objection against the court's decreeing a specific performance. The conduct of the defendant has been such as to deprive him of the benefit of the principle, if, as a general one, it is recognized in equity. The complainant brings himself within the language of Lord Redesdale, in *Lawrenson* v. *Butler* (1 *Schoales & Lefroy* 19), a case always cited to sustain the objection under consideration. The complainant, on the faith of this agreement, has put himself in a situation from which he could not extricate himself. That circumstance is sufficient to induce a court of equity to give relief.

4. The principal ground upon which a decree is resisted is, that when the agreement was entered into, the defendant supposed that his wife would execute the deed; but since she has resisted all his reasonable persuasions, and (by her refusal) it is rendered impossible for him to per-

form his contract, the court ought not, under such circumstances, to make a decree against him to do that which is out of his power to do.

In examining the evidence of the case, it is impossible to resist the conclusion, that the defendant has acted in bad faith in this transaction, and that the unwillingness and refusal of the wife to execute the deed is more in compliance with the wishes of her husband than her own disposition and unrestrained judgment. There is enough evidence to show that the complainant was unwilling to enter into the contract until the wife of the defendant was first consulted, and gave her assent; and that, notwithstanding the denial in the answer, she did assent to the contract. She gave her reasons why she considered the bargain an advantageous one to herself and husband. It is proved that the defendant declared his determination to *back out*, as he expressed it. His position is not one to ask any favor of the court, or to give him the benefit of a doubtful principle to which fair and upright dealing might justly lay a claim.

But the fact is, the wife now refuses to execute the deed; and it is necessary to its validity that she should sign it, and acknowledge, before the proper officer, that she signed, sealed, and delivered it as her voluntary act and deed freely, without any fear, threats, or compulsion of her husband. If the court decrees a specific performance according to the terms of the contract, the husband must procure his wife to sign the deed in some way, *per fas aut nefas*, or else take the consequences of disobedience to the order of the court. This then is, in effect, a decree by which the wife is forced into executing a deed. When she is brought before the proper officer, he certifies to her acknowledgment of its being her *free and voluntary act*, when it is notorious that it is the decree of this court, held up to her *in terrorem*, which must be either obeyed by her husband through her submission, or he be subjected to punishment for disobedience. Such a decree is

against the policy of the law protecting the rights of a wife in the lands of her husband. It is plain to be seen that this mode of alienation might be adopted by an improvident and oppressive man to strip a prudent wife of all the reliance for her future support. Her refusal to sign a deed would be easily overcome by her husband entering into a contract that she shall join him in a conveyance; and then a decree of this court is looked to as the instrument of her oppression. She may have firmness enough to resist his unreasonable demand and entreaties, but yield to the persuasion of a decree of this court, which threatens her continued refusal with the incarceration of her husband. Upon an examination of the authorities, it will be found that the doctrine is not as firmly established as a cursory view of them might lead us to suppose.

Judge Story (*Story's Eq.* 732) pointedly and emphatically condemns the doctrine, that a court of equity will decree the specific performance of an agreement, by which the husband covenants that his wife shall execute a conveyance to bar her of her estate, when performance is resisted on the ground of the wife's refusal to join in the deed. The authorities are referred to; but the author does not give his opinion whether they are such as should lead to the conclusion that the doctrine should be considered as settled by authority either way.

The case of *Hall* v. *Hardy* (3 *P. Wms.* 185-6) was a bill for the specific performance of an award, by which the plaintiff was to pay £10 to the defendant on such a day; and £30 at another day; and that thereupon the defendant should procure his wife to join with him in conveying the premises to the plaintiff and his heirs. *The answer did not set up the refusal of the wife.* The *master of the rolls* says, " there have been a hundred precedents, where, if the husband for a valuable consideration covenants that the wife shall join with him in a fine, the court has decreed the husband to do it, for that he has undertaken it, and must

lie by it, if he does not perform it." And yet the note to this very remark of the master of the rolls (note B, page 188,) leaves it quite uncertain as to the extent to which these hundred precedents carried the doctrine; " because in all these cases it is to be presumed that the husband, where he covenants that his wife shall levy a fine, has first gained her consent for that purpose. So said by the master of the rolls in the case of *Winter* v. *Devereux*, Trinity, 1723; and that the interest in such covenants has been taken to be an inheritance descending to the heir of the covenantee. *But, after all, if it can be made appear to have been impossible for the husband to procure the concurrence of his wife* (as suppose there are differences between them), surely the court would not decree an impossibility, especially where the husband offers to return all the money, with interest and costs, and to answer all the damages." (*Note B*, referred to). But here is the very point we want precedent for—the court's making a decree for the defendant to do an impossibility—*to control the will of his wife* and *compel* her *voluntarily* to execute a deed; for the deed is worthless, except done of her *free* will. There is no difficulty where the defendant does not set up the refusal of his wife as a defence. But where the refusal is set up as a defence, and it appears by the evidence that such refusal is the reason why the defendant does not perform his covenant, for this court to make a decree which *compels* the wife to execute a deed, and then to accept it as a free will offering, is carrying the jurisdiction of the court very far.

The case of *Barry* v. *Wade* (*Rep. Temp. Finch* 180) I have not seen; but the book is admitted not to be very reliable authority. In *Barrington* v. *Stone* (2 *Eq. Abridg.* 17, *pl.* 8,) the decree was, that the husband should procure his wife to join with him in a fine to the plaintiff, according to his covenant. The answer set up that the wife did not seal the deed, but not her refusal to join with her husband in a fine.

In *Otread* v. *Round* (4 *Vin. Ab.* 202, *pl.* 4,) Lord Cowper refused to decree a specific performance of such a covenant, the husband offering to refund the purchase money with costs. The case, as cited in *Viner*, is as follows: " Husband and wife did, upon a valuable consideration, by lease and release, convey the wife's land in fee, and covenanted that the wife should levy a fine of the same to the use of the purchaser. The wife refused to levy a fine. The plaintiff brought his bill to have his title perfected by a specific performance of the covenant, and a precedent was cited where a specific performance had been decreed in the like case ; but the *Chancellor* would not decree a specific performance in this case, because upon such decree the husband could not compel his wife to levy a fine ; and if she would not comply, imprisonment would fall upon the husband for contempt, which was the ill consequence of the decree in the said cited case."

In *Emery* v. *Ware* (8 *Ves.* 505), Lord Eldon refuses his assent to the doctrine carried to the extent of the court's making the decree in the face of the refusal of the wife ; and in *Martin* v. *Mitchell* (2 *Jac. & Walk.* 418), Sir Thomas Plumer, master of the rolls, decides these points : that a husband and wife, having a joint power of appointment by deed over the wife's estate, agree in writing to sell it, a decree for specific performance cannot be compelled against them ; and under a contract by husband and wife for sale of the wife's estate, the court will not decree him to procure her to join. He remarks, " the point, that the court should compel the husband to coerce the wife to join with him in the conveyance, was abandoned. The counsel did not urge that *that* is the law now, and that the husband was to go to prison, if she refuses to concur."

Upon a careful examination of all the authorities, if the alternative were presented to me of making a decree for specific performance by procuring the wife to join in the deed, or to dismiss this bill, I should accept the latter.

I am, however, relieved in this case from denying the complainant relief on account of any such embarrassment. The complainant offers by his bill, in case of the refusal of the defendant's wife to join in the deed, to take *indemnity*. The power of the court to direct indemnity is denied. The case eminently calls for its exercise, and I do not think it can be denied upon authority or principle.

In the case of *Milligan* v. *Cooke* (16 *Ves.* 1), for the plaintiff it was stated, that he desired not a reduction of the purchase money, but an indemnity against the risk, which must not be a personal indemnity, but upon real estate, or by part of the purchase money to be kept in court, the defendant taking the dividends. Lord Eldon said the purchaser was entitled to that; that the proper compensation was indemnity, by which the loss, if it should happen, would be made good, and if it did not happen, there was no occasion for compensation. A reference was made to a master to settle such security by way of indemnity, as, under all the circumstances of the title, it should appear just and reasonable that the defendant should execute. Upon an intimation of the Lord Chancellor, the case was reargued, and the decree was affirmed. I cannot find that, by any subsequent case, the propriety of this decision of Lord Eldon has been questioned.

In *Balamanno* v. *Lumley* (1 *V. & B*. 224), Lord Eldon confined the order to compensation, and is reported to have said he did not apprehend the court could compel the purchaser to take an indemnity, or the vendor to give it. He certainly did not mean to question the correctness of the principle upon which he had made the decree in *Milligan* v. *Cooke*. The manner in which both those cases are referred to, in a note to *Patton* v. *Brebner and another*, (1 *Bligh* 67) shows that they were not considered in conflict, or that the latter overruled the former; but that, while it is a general rule that courts of equity will not compel a vender to give an indemnity, there is no inflexible rule or principle to prevent the court's doing it when

a proper case presents itself. If there is anything in the reasoning, that a court of equity cannot, upon principle, decree an indemnity because the parties have not contracted for it, it would equally apply against the jurisdiction of the court to award compensation for any deficiency in the title, quantity, quality, description, or other matters touching the estate. In *Graham* v. *Oliver* (3 *Beav.* 124), Lord Langdale says: "There is, however, a very great difficulty in all these cases, and I scarcely know how it can be overcome; though a partial performance only, it has been somewhat incorrectly called a specific performance. The sentiments of Lord Redesdale on this point, as expressed by him in two cases before him, are strongly impressed on my mind. The court has thought it right, in many cases, to get over these difficulties for the purpose of compelling parties to perform the agreements into which they have entered ; and it is right they should be compelled to do so, where it can be done without any great preponderance of inconvenience."

In the case before the court, if it is beyond the reach of its jurisdiction to decree indemnity, then it has not the power to do what is manifestly equitable and just between the parties to this contract, and the complainant must submit to a fraud without any adequate means of redress. Indemnity can be ordered in this case, not only "without any great preponderance of inconvenience," but without any inconvenience at all. As the case is presented, it is the very remedy which suggests itself as the proper and natural mode of administering equity between the parties, and is free from every objection as to hardship or inconvenience. The defendant need not be called upon to give *collateral* indemnity, but it may be obtained in settling the mutual conveyances to be made between the parties.

By the terms of the agreement, the complainant is to convey to the defendant the Butz farm, and pay him one thousand dollars, as the consideration for the premises which the defendant has agreed to convey to the com

2 M*

plainant. The wife of the defendant refuses to unite with her husband in the conveyance ; and this refusal is owing entirely to the contrivance and fraud of the defendant, who, in this way, is endeavoring to deprive the complainant of the benefit of a specific performance of the contract. The court should order this agreement performed, and the conveyances to be so made between the parties that the complainant may hold in the land which *he* conveys an indemnity against any future claim to be set up by the defendant's wife.

I shall decree a specific performance and a reference to a master, with directions to settle the conveyances ; and if the wife of the defendant refuses to join her husband in a deed, then to direct the conveyances in such a manner as will afford the complainant a complete indemnity in the premises.

The appeal was argued by

*Bradley* and *Nevius*, for appellant.

*Browning* and *Dayton*, for respondent.

The following opinions were now delivered.

POTTS, J. I am of opinion that the decree of the Chancellor, in this case, should be affirmed. It does substantial justice between the parties, and this is the great end of equity.

I see nothing in the evidence to impugn the fairness of the contract. Mr. Young had all the time for consideration that he required. He acted voluntarily. He was well acquainted with the subject matter in respect to which he was dealing ; he knew the value of his own farm, and of the one he agreed to take in exchange for it. The one thousand dollars difference was the sum proposed by himself.

There is no doubt his wife assented to the sale in the first instance. It was not until some time afterwards that

she changed her mind, and determined not to execute the deed; whether this was of her own volition, or brought about by the influence of her husband, makes no difference. The decree in no way impairs or affects her rights.

The controlling equity of the appellee's case is, that upon the faith of his agreement with Young, he was drawn into the purchase of the Butz farm, and was thus placed in a position from which he could not extricate himself. He bought that farm, not for himself—he did not want it—but for Mr. Young. That was distinctly understood beforehand by Mr. Young. The appellee has that farm upon his hands, and a court of law cannot relieve him from it.

The decree made by the Chancellor meets and satisfies the equity of the case. It directs performance only so far as the appellant is able to perform—a conveyance of the Young farm *free of the encumbrance* of the wife's dower, if she chooses voluntarily to join her husband in the conveyance; *subject to the encumbrance,* if she declines to do so; and in the last alternative directs indemnity to be made by Young out of the one thousand dollars and the Butz farm.

The objection taken is to the *indemnity.*

*Batten,* in his recent treatise on the law of specific performance, 67 *Law Lib.* 171, says, "the court will not compel a purchaser to take an indemnity, nor a vendor to give it; and he cites, as his authority, the cases of *Balamanno* v. *Lumley, Aylett* v. *Ashton,* and *Patten* v. *Brabner.*

*Balamanno* v. *Lumley,* 1 *Ves. & Beam.* 224, is the leading case. It was a bill, by the vendee, for specific performance of a contract for the purchase of an estate. The title was alleged to be defective, and the purchaser moved for a reference to look into the title, and, if found defective, to settle the proper compensation or indemnity, his counsel suggesting that, as to part of the estate, indemnity might be more convenient than compensation. The vendor's counsel objected to indemnity, which, he said, might

prove inconvenient to families; and Lord Eldon said "he did not apprehend the court would *compel the purchaser* to take an indemnity, *or the vendee to give it*," and accordingly confined the order to compensation. This is the whole case.

*Aylett* v. *Ashton*, 1 *Mylne & Craig* 105, was a bill for the specific performance of a contract for a lease. The *contract was entered into by the wife alone*, and in respect to her separate property. It turned out that, as to part of the premises, she had no title. The bill was against her and her husband. The court held that there was no jurisdiction to make a decree against the wife, her trustees not being parties, nor against the husband, he not having signed the contract; and the master of the rolls merely added, at the close of his opinion, that "parties may, no doubt, contract for a covenant of indemnity; but if they do not, the court cannot compel a party to execute a conveyance and to give an indemnity, "referring, as authority, to *Balamanno* v. *Lumley* and *Patten* v. *Brebner*, in which last case, reported in 1 *Bligh* 66, Lord Eldon merely refers to the rule, as stated in the former case.

On the other hand, in the case of *Milligan* v. *Cooke*, 16 *Vesey* 1, Lord Eldon, after two arguments and upon full consideration, held that that was a case for compensation, and that the proper compensation was indemnity; for by this, he said, *the loss, if it happened, would be made good, and if it did not happen, there was no occasion for compensation.* It was a bill for specific performance brought by the purchaser of a leasehold estate. The defect consisted in the representation by the particular of a church lease for twenty-one years, with covenants for renewals to sixty-three years, the lease being actually for lives, and the covenants limited and contingent. The consequent uncertainty whether any loss would occur, was the controlling reason why indemnity was decreed instead of compensation. This reason exists in the case before us, and is, in my judgment, a solid one.

Compensation settled by the Court of Chancery, or damages assessed at law, might do great injustice, if the wife should not survive her husband, to the vendor, if she should survive him very many years, to the vendee, while indemnity would do certain justice. As to its being an inconvenience to Mr. Young, it will always be in the power of the wife to remove the inconvenience by perfecting the title.

It is said, if Young refuses to comply with the directions of the decree of the Chancellor, and is committed for contempt, that will operate to compel the wife to join in executing the deed; and that this is against principle. But there would be no more compulsion in this than there would be in a decree that a husband should pay a sum of money, or be in contempt for not doing so, where the wife might relieve him by raising and paying the money out of her separate estate. If Young puts himself in contempt at all, it will be not because his *wife* refuses to execute the deed, but because *he* refuses to convey and to give indemnity.

RYERSON, J. I concur in affirming the decree of the Chancellor, being satisfied that the contract was entered into with fairness and good faith on the part of the complainant, after full advisement and deliberation on the part of the defendant, having first consulted his wife, and obtained her full approval and consent, and that her subsequent refusal to join in the conveyance resulted from his interference.

On the faith of this contract, the complainant purchased the Butz farm and he cannot obtain adequate relief at law in action for damages which would leave him with that farm upon his hands, a farm that he did not want, and purchased only to fulfil his contract.

Justice can be done in no other way than by the Chancellor's decree, and it will work no wrong to the defendant; his wife having once changed her mind to aid him

in the determination of backing out, which he so emphatically expressed, will probably as readily change back to her first opinion, when he finds it to be to his interest to do so, and join with him in the conveyance; if she declines to do this, her husband will be subjected to no other hardship than what he has brought upon himself by his own misconduct, and which he should bear, rather than deny adequate relief to the complainant.

The objection of want of mutuality has no application to this case, and I am well satisfied that in a proper case, such as this eminently is, the Court of Chancery has power to decree indemnity, and ought to do it, rather than allow the defendant to practise what would be a fraud upon the complainant; while the rights of married women should be protected to their full extent, a husband ought not to be allowed to avail himself of such a plea in a case like this.

Not intending to write a formal opinion, it is nevertheless proper to express concisely my reasons for affirming the decree, lest this case might be made a precedent for cases differently situated, cases where the wife's refusal to join in the conveyance was *bona fide*, and not the result of the husband's interference, or cases where an action for damages would give adequate redress.

ELMER, J., concurred in the above opinion.

Decision affirmed by the following vote:

*For affirmance*—Judges CORNELISON, HAINES, OGDEN, RYERSON, ELMER, HUYLER, POTTS, VREDENBURGH.

*For reversal*—CHIEF JUSTICE, JUDGES ARROWSMITH, RISLEY, VALENTINE, WILLS.

CITED *in Hopper v. Hopper*, 1 *C. E. Gr.* 149; *Hawralty v. Warren*, * *C. E. Gr.* 128; *Pinner v. Sharp*, 8 *C, E. Gr.* 282; *Reilly v. Smith*, 10 *C. E. Gr.* 159; *Lounsbery v. Locander*, 10 *C. E. Gr.* 557; *Peeler v. Levy*, 1 *C. E. Gr.* 335.