Nov. 1813.

BUTLER
v.
BUCKINGHAM.

PETER BUTLER and WILLIAM ATWATER *against* JULIANA BUCKINGHAM.

Anagreement
by a *feme-
covert,* with
the assent of
her husband,
for the sale of
her real es-
tate, is void,
and cannot be
enforced in
chancery a-
gainst her.

CASE reserved.

This was a petition in chancery, brought, originally, to the Superior Court, against the defendant, praying for an injunction against certain proceedings at law.

The petition stated, that in the year 1790, *Joseph Bryan* died, leaving the defendant, his widow, and *Joseph Bryan, Julia Bryan, Richard S. Bryan* and *Isaac Bryan,* his children and heirs at law; that at the death of *Joseph Bryan,* the elder, he was seised and possessed of a certain lot of land, in *Milford,* with a house, barn and other buildings thereon, to

one third part of which, the defendant had the right of dower ; that prior to the year 1793, the defendant was married to *Gideon Buckingham,* Esq., since deceased ; that on the 24th of *January,* 1793, the defendant, during her coverture, and with the consent and approbation of her husband, for the consideration of 180*l.* agreed to sell to the plaintiffs the lot of land before mentioned, and also, to quit-claim her right of dower in the same ; that the consideration for the sale of the land, was, with the consent and approbation of her husband, paid over to the defendant, and by her appropriated to her own separate use, and remained her separate estate, after the decease of her husband ; and that, thereupon, *Gideon Buckingham,* he being then in full life, and his wife, the defendant, in pursuance of the agreement before mentioned, jointly executed and delivered to the plaintiffs, a certain bond for the penal sum of 800*l.,* to which the following condition was annexed, *viz.* " The condition of the above obligation is such, that whereas the said *Juliana Buckingham* has this day bargained and sold to the above said *William Atwater* and *Peter Butler,* for the consideration of 180*l.,* a certain piece of land lying in said *Milford,* near the meeting-house, containing about one acre, more or less ; bounded, &c. " together with the house, barn and other buildings thereon standing and being ; said premises are disposed of, for, and in behalf of the heirs of *Joseph Bryan,* deceased ; now, if said heirs, *viz. Joseph Bryan, Julia Bryan, Richard S. Bryan* and *Isaac Bryan,* shall, and will, in a reasonable time after said *Isaac* shall arrive to the age of twenty-one years, execute and give to said *William Atwater* and *Peter Butler,* or to their heirs, a good warrantee deed of the foregoing premises ; and said *Juliana Buckingham* shall, likewise, quit-claim all her right of dower to the same, then the foregoing deed shall be null and void ; otherwise, and on failure of their giving and executing deeds, as aforesaid, said bond shall be in full force and virtue," &c. which instrument, on the 24th of *January,* 1793, was duly recorded in the records of lands in the town of *Milford.*

It was further stated, that *Isaac Bryan* arrived at the age of twenty-one years, prior to the year 1810, and more than

Nov. 1813.

BUTLER
*v.*
BUCKINGHAM.

six years before the date of the petition ; that immediately upon the execution of the bond, and the making of the contract above mentioned, and in pursuance thereof, the plaintiffs, with the consent of the defendant and her husband, *Gideon Buckingham,* entered upon the land, and from that time to the date of the petition, a period of more than twenty years, had peaceably and quietly held and enjoyed the same, holding out all others therefrom ; that in full confidence that the defendant would faithfully perform her agreement, the plaintiffs, during the life of *Gideon Buckingham,* and with his knowledge and the knowledge of the defendant, expended the sum of 4000 dollars in the erection of a house and store, and in making other permanent improvements upon the land ; that *Gideon Buckingham* died in the year 1810, and that the defendant had, ever since, remained single and unmarried ; that the defendant, after the death of her husband, *Gideon Buckingham,* had at all times refused to perform her agreement, or to quit-claim her right of dower, or to make any conveyance thereof, though often requested so to do ; and that the defendant had commenced an action at law, against *Peter Butler,* one of the plaintiffs, to recover her right of dower in the premises, which action was then pending ; and that she threatened to commence a similar action against *William Atwater,* the other plaintiff, for the same object.

It was also stated, that the plaintiffs had acquired the legal title to the whole piece of land, excepting the defendant's right of dower therein, and that such right was of the value of 400 dollars ; and that the plaintiffs were without adequate remedy at law. The relief prayed for, was an injunction against any proceedings at law, in behalf of the defendant, for the recovery of her right of dower in the premises ; or that the title of the land might be passed to the plaintiffs.

To the petition there was a demurrer, and joinder in demurrer. The Superior Court gave no opinion on the case ; which, by consent of the parties, was reserved for the consideration and advice of the nine Judges.

*R. M. Sherman* and *Staples*, in support of the demurrer. The object of the present suit, is an injunction against proceedings at law, or that the title of the land may be passed to the plaintiffs. The court can neither do one nor the other. The deed of a *feme-covert* is absolutely void. She may plead *non est factum* in a suit brought upon a bond executed by her during coverture.

The act of the defendant cannot be validated, even by her assent after discoverture : But she has done nothing to affirm the covenant. It is void, both as to the nature of the instrument, and the subject matter. 4 *Vin. Abr.* 203. 2 *Eq. Ca. Abr.* 145. *Emery* v. *Wase*, 5 *Ves. Jr.* 846. *Bro. Abr.* 190. *pl.* 67. No case can be found in any of the books, where a contract has been enforced, under circumstances like the present. A court of chancery cannot validate a contract of a *feme-covert*. Chancery will never interfere upon a contract, which, at law, would not sustain an action.

Besides, in cases where the unity of husband and wife disables the wife, it disables the husband also. Any contract, therefore, between husband and wife, is void on this ground.

But further, a *feme-covert* may alienate her separate property, because she is not under the coercion of her husband ; and, therefore, in such case, is to be considered as a *feme-sole :* But cases of this sort have no relevancy to the present.

The reason why, in *England,* a *feme-covert* cannot alienate her real estate, is, because she is supposed to be under the coercion of her husband. She cannot, therefore, convey by *fine and recovery.* An agreement, by a *feme-covert*, to convey her lands by fine, could not be enforced in *England.*

*N. Smith* and *Denison,* contra. It has been the uniform course of proceeding, in chancery, in *England,* to decree the performance of contracts entered into by husband and wife, relating to her real estate. 1 *Pow. Contr.* 60, 61, 62, 63, 64. *Baker* v. *Child,* 2 *Vern.* 61. S. C. 1 *Eq. Ca. Abr.* 25. *Kyd Awards,* 46, 47. (*Farrand's* edit.) The same course has been adopted in this country. *Downey* v. *Hotchkiss,* 2 *Day's Rep.* 225.

Nov. 1813.

BUTLER
v.
BUCKINGHAM.

An agreement, by *feme-covert*, with her husband, for the benefit of her estate, will be enforced. 1 *Pow. Contr.* 108, 109, 110. *Rothwell* v. *Widdrington*, 1 *Vern.* 456.

So also, where a contract has been entered into by the husband, with the assent of the wife, relating to her real estate, such contract will be enforced. 1 *Pow. Contr.* 124. There is a strange inconsistency in supposing, that a *femecovert* may convey her lands, with her husband's consent, and yet, that she shall not be able to agree to make such conveyance. A conveyance must, necessarily, be made in performance of an agreement for that purpose.

INGERSOLL, J. My opinion is, that on the facts stated in the petition, the petitioners are entitled to no relief. In the discussion of this case, by the counsel at the bar, the power of a *feme-covert* to bind her separate estate, by her contract during the coverture, as is natural to suppose, underwent a very thorough investigation. Indeed, this was the great point in the case.

On the part of the petitioners, it was contended, that a court of chancery recognized such power, in a pretty extensive sense, and would decree the execution of any contract made within it. On the other hand, it was insisted, that the common law knew no such power; and that even in *Great-Britain*, a court of chancery did not give effect to any contract of a *feme-covert*, so as to bind her or her property, except in certain peculiar cases. But that whatever the practice of the court of chancery in *Great-Britain* may be on the subject, yet, it was said, that the statute of this state put the matter beyond all dispute, as it made every contract of a *feme-covert*, with respect to her real estate, void, except a deed executed by her with her husband, and acknowledged before proper authority. That further, in all cases in *Great-Britain*, where it had been determined, that she could contract as a *feme-sole*, such determination was grounded on the idea of her holding an estate separate from her husband; but that such doctrine was exploded by this court, in the case of *Dibble* v. *Hutton*, 1 *Day's Rep.* 221.

It is very clear, to my mind, that the contract of the respondent, to convey her right of dower, as set forth in the petition, was absolutely void, and that no relief against a woman, in a case circumstanced as this is, has ever been given. True, it is laid down by elementary writers, and authorities are quoted to justify the position, that as to the separate estate of a *feme-covert*, she is, by the court of chancery in *Great-Britain*, considered as a *feme-sole ;* and that this court will carry into execution her contracts with respect to such estate. To this position, I subscribe ; but when I do it, I must explain the principle on which the court of chancery proceeds in such cases, and shew the kind of estate it operates upon, as well as the mode in which relief is given.

This estate is not all the real estate belonging to the *feme-covert,* nor is it her right of dower in the real estate of her husband ; but is such estate only, be it real or personal, as is settled on her, for her separate use, without any control over it, on the part of her husband. As to this kind of estate, the court of chancery, to certain purposes, considers her as a *feme-sole ;* and her contracts relative to it, if made in a particular manner, are binding.

How far, and in what cases, it will enforce such contracts, will be best seen, by adverting to *Newland's* treatise on contracts, in which he takes up the subject, and states the cases, that have been decided on it. This part of his treatise begins in page 23., and ends in page 31. He says, in page 23., " If she," (a *feme-covert*) " enters into an agreement, and sufficiently indicates her intention to affect by it her separate estate, a court of equity will apply it to the satisfaction of such engagement, in the same manner as if she had been a *feme-sole.*" He cites the case of *Grigby* v. *Cox*, 1 *Ves.* 517. and observes, " Where on the marriage, an estate was settled in trustees to receive the rents, for the sole and separate use of the wife, and as she should appoint, whether *sole* or *covert ;* the wife, by deeds of appointment, sells part to the plaintiff, and the husband covenants, that the purchase should be free from incumbrances ; but the trustees were not consulted therein ; on a bill by the purchaser to have the effect of

this bargain; *per* Ld. *Hardwicke*, The rule of the court is, that where any thing is settled to the wife's separate use, she is considered as a *feme-sole*, may appoint in what manner she pleases, and unless the joining of her trustees with her, is made necessary, there is no occasion for that. And his lordship established this purchase." He cites, also, the case of *Pybus* v. *Smith*, 3 *Brown's* C. C. 340., in which Ld. *Thurlow* says, "That if a *feme-covert* sees what she is about, the court allows her alienation of her separate property." This was a case where the trusts of a settlement subsequent to the marriage, were, during the life of the wife, to pay the rents of real estates to such person as she shall by any deed appoint, in default thereof in trust for her and her heirs; and there were other trusts to pay the dividends of bank annuities to such persons, as she by writing under her hand, should appoint. "The wife, by deed of appointment, conveys and assigns all her interest in the real estate, and in bank annuities, to creditors of the husband, as a security for his debts." It is stated, also, by *Newland*, "that it is not necessary, in order to enable a *feme-covert* to charge her separate property by her agreement, that a power of appointment should have been reserved to her; for if she takes an absolute, unqualified interest in her separate property, the power of appointing it as she pleases, is incidental to such a property." For this position he cites a decision of sir *William Grant*, master of the rolls, in the case of *Wagstaff* v. *Smith*, 9 *Ves. Jr.* 520.; and also, the case of *Fettiplace* v. *Gorges*, 3 *Brown's* C. C. 8., and 1 *Ves. Jr.* 46. "In a prior case, however," he says, "that Ld. *Rosslyn* considered the circumstance of there being no power of appointment reserved to the wife, as material; but his lordship, in deciding that case, did not proceed on that ground alone, but coupled with it, other circumstances."

This case is in 5 *Ves. Jr.* 692., and is as follows : "The trust was for the trustees to receive the rents of the estates, and to pay them, when, and as they were received, unto the wife, or otherwise, in their discretion, to permit her to receive them, and her assigns, during her life, for her separate use. The husband and wife, in consideration of 300*l.*, grant-

ed an annuity of 45*l.* to the plaintiff, secured upon the trust estates, during the lives of the husband and wife ; a fine (which was unnecessary) was levied, and the sum of 40*l.* for the expences of the transaction, and of 10*l.* for commission, were paid out of the 300*l.* The trustees had apprised the plaintiff, that the husband was a monied man, and that the fund was the separate estate of the wife. Under all these circumstances, Ld. *Rosslyn*, in a suit instituted by the grantee against the trustees, the husband and wife, to have the annuity paid out of the rents of the estates, dismissed the bill with costs." He (*Newland*) goes on to say, " If from the mode in which the separate property is settled on the wife, it can be collected, that the wife was not to have the power of disposition, she then will be incapable of making an effectual charge on her separate estate. Lord *Rosslyn*, in the last case, much doubted, whether a trust, to pay to the separate use of a married woman, rents and profits, from time to time, could be considered, as a trust to pay by anticipation ; his lordship distinguishing that case from *Pybus* v. *Smith*, by the circumstance of the wife having, in the latter case, a power of appointment. So, where a provision in a deed of separation, was expressed to be, for the maintenance and support of the wife ; and the deed likewise contained a cevenant by the trustee, to indemnify the husband against the wife's debts, the court considered her as restricted from alienating this property." This was determined in the case of *Hyde* v. *Price*, 3 *Ves. Jr.* 437., and *Hovey* v. *Blakeman*, cited in 9 *Ves. Jr.* 524. " In the cases cited," as *Newland* observes, " when the court gave effect to an agreement of the wife, touching her separate estate, she had expressly appointed it." But there are cases, also, on this subject, as he observes, in which it has been decided, " that a wife may, by an instrument, which, in the form of it, amounts only to a personal demand, and which does not refer, on the face of it, to her separate estate, be considered as intending to charge that property." Such cases are the following, *viz.* the case of *Standford* v. *Marshall*, 2 *Atk.* 69. " where a father, by deed, created a trust of a real estate for

Nov. 1813.

BUTLER
*v.*
BUCKINGHAM.

the benefit of his daughters, the rents and profits to be paid them, whether *sole* or *covert*, for their separate use, either to their own, or the hands of any person that they should appoint. The daughters joined with their husbands in bonds for money lent to their husbands; the trustees refusing to pay, the creditors brought a bill to compel him to pay the rents and profits of the trust estate. *Per* Master of the Rolls: The daughters had an absolute power over the rents and profits, and, certainly, could assign them, by mortgage, or otherwise ; and the court will never encourage the locking up of property, which would be the case, if the daughters could not create any lien they thought proper, upon their interest in the estate ; and, therefore, ordered the trustees to pay the rents and profits of the trust estate to the creditor." So, in the case of *Norton* v. *Turvill,* 2 *P. Wms.* 144. " where a *feme-covert,* before her marriage, with the consent of her then intended husband, conveyed an estate to her separate use, and after her marriage, she borrowed 25*l.* on her bond ; ten years afterward, she made her will, appointing executors. On a bill against them, by the obligee of the bond, the Master of the Rolls held, that the separate estate in their hands was liable." The same principle is adopted by Ld. *Thurlow,* in the case of *Hulme* v. *Tenant,* in 1 *Brown's* C. C. 16., which is also cited by *Newland.* That was a case, " Where, upon the marriage, the estate of the wife was conveyed to trustees in trust, to receive, and to pay, the rents and profits to the wife for her separate use, and to convey the estate itself to such uses, as she by her will, or by deed or writing, under her hand and seal, attested by two witnesses, should appoint ; in default of appointment, to herself in fee. The wife joined her husband in a bond for money borrowed by him and herself. On a bill by the obligee of this bond, against the husband, wife and her surviving trustee, to recover the sums secured, out of the wife's separate estate ; Ld. *Thurlow* held, that the rents and profits of it, were applicable to the payment of this debt." *Newland* goes on to observe relative to this case, that though equity will apply the separate property of the wife to the ful-

filment of her engagements, when she manifests a sufficient intention to subject it to them, *that* court will make no personal decree against her; and cites the opinion of Ld. *Thurlow* in this very case of *Hulme* v. *Tenant* as expressed in page 21. of *Brown's Rep.* as an authority. The words of Ld. *Thurlow* are, " I believe there is no instance of a personal decree against a *feme-covert*, for payment of any sum whatever. Though her separate personal property is liable ; yet, the decree is to fetch forth her separate estate, and make it liable to her engagements."

Thus, it appears by these decisions, (and I believe they are the only decisions of any consequence on the subject,) that the separate property of a *feme-covert*, over which a court of chancery holds jurisdiction, and subjects to her contract, is *that* property alone, which is settled to her sole and separate use, by some will, writing, or deed of settlement, with a power expressly, or impliedly given her, of managing it without the concurrence of her husband. No case went on the ground, that a *feme-covert* had a general power to make any valid contract with respect to her real estate, or to make any transfer of the same, in any way or manner she pleased, provided she had the consent of her husband to such contract or transfer.

Cases there are, indeed, (and which were cited in the argument of this case,) where a court of chancery has obliged a husband specifically to fulfil his covenant, or to procure it to be fulfilled, whenever he has covenanted, that his wife shall levy a fine, or make other sufficient conveyance of such real estate, which she holds in her own right ; or such right as she has in the real estate of her husband. What these cases are, and on what ground decided, may be seen in *Newland*, from page 103. to page 108. inclusive. The first case he mentions, is the case of *Griffen* v. *Taylor*, determined in the reign of *Charles* I., " wherein the court ordered a man to procure his wife to levy a fine of mortgaged lands." So also in the case of *Berry* v. *Wade*, *Finch* 180., " where the plaintiff being about to build some houses near the ground of the defendant, proposed that the defendant should have so much

of his, the plaintiff's, ground for an alley, if he, the defendant, would set out so much of his own ground, in lieu thereof, for the plaintiff to build on; this being agreed on between them, the plaintiff accordingly built on the ground so set out. Afterwards, the defendant refusing to confirm the agreement, and bringing an ejectment, the matter was referred to arbitrators, who awarded a conveyance of the ground to the plaintiff. On a bill brought by him, to have this agreement and award performed, the defendant, as to the award, pleaded, that he and his wife were jointly seised of the piece of ground in question, and that she was no party to the submission. But the court decreed the defendant to convey the said piece of ground to the plaintiff according to the agreement, and the master to settle it." He mentions another case, also, wherein " it was decreed by Ld. *Cowper,* that the defendant should procure his wife to join with him in a fine to the plaintiff, according to his covenant, since he has taken upon himself to do it, and the plaintiff had paid the full value of the estate." *Newland* observes, that the reason which is to be the principle of these cases, is, because, it is to be presumed, that the husband, when he enters into such a covenant, has first gained his wife's consent to do the act, and cites 3 *P. Wms.* 188., in the note, as an authority. He goes on to say, however, that in a subsequent case, *viz.* that of *Outram* v. *Round,* 4 *Vin. Abr.* 203. in marginal note, " Ld. *Cowper* refused to decree the specific performance of such a covenant." In giving his opinion, he says, " It is a tender point to compel the husband, by a decree, to procure his wife to levy a fine, though there have been some precedents in this court for it; and it is a great breach upon the wisdom of the law, which secures his wife's lands from being aliened by the husband, without her free and voluntary consent, to lay a necessity upon the wife to part with her lands; or otherwise, to be the cause of her husband's lying in prison all his days. And his lordship did not think it proper, in this case, to decree a specific performance."

In opposition to this decision, he states, that " Sir *Joseph Jekyll,* in the case of *Hall* v. *Hardy,* 3 *P. Wms.* 186., seems

to consider it as a very common proceeding in equity, to decree the husband to perform such a covenant." He said, " that there had been a hundred precedents, where, if the husband, for a valuable consideration, covenanted, that the wife should join with him in a fine, the court had decreed the husband to do it; for that he had undertaken it, and must lie by it, if he did not perform it." To which, as he observed, two late cases may be added, *viz.* the case of *Withers* v. *Pinchard,* cited in 7 *Ves. Jr.* 475.; and that of *Stephenson* v. *Morris,* 7 *Ves. Jr.* 474., where a specific performance was decreed, on such a covenant of the husband, as is above stated. " But," he says, " notwithstanding these cases, the point which was the subject of them, must still be considered very doubtful." He says further, " from the judgment, likewise, of Ld. *Eldon,* in the case of *Emery* v. *Wase,* 5 *Ves. Jr.* 846. it plainly appears, that his lordship, notwithstanding the former decisions on the subject, did not consider the point, whether equity would decree the performance of such a covenant to be settled ; on the contrary, his lordship said, he should pause, before he should follow the two last authorities."

Thus, I have endeavoured to bring together all the cases, which have been cited, as bearing on the point now under consideration. The first class of cases, as has been observed, comprises those cases, where a court of chancery has so far validated the contract of a *feme-covert,* as to lay hold of the property settled to her separate use, for the purpose of applying it in fulfilment of such contract. The other class is, where the husband has covenanted, that his wife should make a valid conveyance of her land ; and true it is, that a court of chancery has, in many instances, decreed, that the husband shall procure the conveyance to be made.

It will be remembered, however, that it is by no means a settled point, that the husband will be obliged to procure his covenant to be specifically performed, in the manner as above stated. But to make the most of the decision, in the last class of cases, they are no more than obliging a man to do, what he has covenanted to do. They are no more than

Nov. 1813.

BUTLER
v.
BUCKINGHAM

saying, if a man should covenant that his neighbour should make a conveyance of a particular piece of estate, that the covenantor should see to it, that his covenant was specifically performed. To enforce such a covenant specifically, I agree, would be extremely hard; but if a man will be so foolish as to make such a covenant, how is he to avoid it?

But none of the principles adopted in the cases above mentioned, will apply to the present case. Not one authority from the *English* books, has been produced, and, I presume, none can be produced, where a court of chancery has enforced the contract of a *feme-covert* against her, in a case circumstanced as this is, and in the manner prayed for in the petition. It strikes me, that the whole system of the common law of *England* is opposed to the doctrine contended for, by the petitioners. It is a fundamental principle of that law, that the contract of a *feme-covert*, is absolutely void, except in the instance of conveying her estate by fine duly acknowledged, or by some matter of record. In such case, also, she is privately examined, in order to ascertain, whether such conveyance be voluntary on her part, and whether, in making it, she be uninfluenced and uncontrolled by her husband. How absurd, then, would it be, to enforce such a contract to convey, made without any such examination? This would be saying, that a *feme-covert* cannot directly convey her estate, unless her free consent be obtained, by a private examination; and yet, she can contract to convey without such examination, and such contract shall be carried into execution. By this mode, the law, with respect to a *feme-covert*, and her real estate, will be completely done away.

But, as has been observed, the court of chancery in *Great-Britain*, never have proceeded on such absurd grounds. The old common law rule, with respect to her contracts, remains entire. The chancery courts mean not to trespass on this rule. But when it became the fashion to settle estates to the separate and sole use of the *feme-covert*, chancery considered these estates as belonging to her solely, without any right therein, or control thereof, on the part of the husband.

As to such estates, she was considered as a *feme-sole*, and her contracts with respect to them, as binding. As to all other estates not settled to her separate use, no contract of her's has been held as binding on them.

The covenant of the husband that she should convey, has been held, in some instances, as binding on him to procure a conveyance ; but this, by the bye, is by no means a settled principle.

These observations are peculiarly applicable to the contracts of a *feme-covert* in this state. Our statute says, in so many words, that her estate " shall not be alienable by her husband's deed, without her consent, testified by her hand and seal to such deed, and acknowledgment of the same, before an assistant or justice of the peace : And that all sales or alienations of such estate, whether absolute or conditional, without such consent, witnessed and acknowledged as aforesaid, are hereby declared and made to be, *ipso facto*, void." All sales void ; and yet, all contracts for sales good ! What an absurdity this ! No ; this cannot be. If the sale of the estate, unless with the circumstances above mentioned, be void, every contract to sell at a future day, must be equally void. And if so, it forms no consideration on the ground of which to recover damages, for the non-fulfilment of it. If so, it cannot be specifically carried into execution ; for there is nothing to be carried into execution. It is a mere nullity ; and, therefore, connot be executed. As to her holding a separate estate, according to the chancery ideas in *Great-Britain ;* that doctrine was considered and exploded, by the Supreme Court of Errors, in the case of *Dibble* v. *Hutton*, 1 *Day's Rep.* 235.

I, therefore, am very clear, that the petition, in the present case, states no facts, whereon a court of chancery can give relief.

The other Judges, severally, concurred.

Petition insufficient.