### Sylvanus C. Dickinson *vs.* William Glenney and Others.

A deed of land, defective in some formal requisite, is treated practically in a court of chancery as an executory contract for the sale of the land.

The court in such case looks through the deed at the contract of the parties lying back of it, and of which the deed is the evidence.

And the relief which it furnishes, is not so properly a reformation of the defective instrument, as the compelling the specific performance of the contract.

But chancery will not enforce voluntary contracts, and where the deed is of that character will furnish no relief.

Nor will it contravene the express provisions or the policy of the law to furnish such relief.

The rule which, by creating an arbitrary disability, protects married women from the alienation of their real estate through the acts or coercion of their husbands, is founded on a policy which will be respected by a court of chancery.

It will therefore refuse its aid, where the defective deed is that of a married woman, and the defect arises from the omission of some statute requisite.

And it will not avail to regard such defective deed as an executory contract, or to look through the deed at the contract behind it, since the contracts of married women, not made in the form prescribed by law, are absolutely void.

Where a wife, for the purpose of conveying her real estate to her husband, had executed a voluntary deed, which was defective in a statute requisite, and after the death of both the devisee of the husband brought a petition in chancery against the heir of the wife, to compel him to convey,—it was held, that the petitioner's equity was not aided by the fact that the husband had expended money in repairs and improvements on the land,—nor by the fact that the respondent was a mere volunteer, as he stood himself in the same position.

Petition in chancery to compel the conveyance of real estate. The land in question was conveyed in 1823, by one

Platt to Maria S. Dickinson, the wife of Isaac Dickinson. The consideration was in part paid from the proceeds of property belonging to her before marriage, it not appearing how the rest was paid. On the 4th of October, 1824, she united with her husband in the execution of an instrument intended as a conveyance of the land to a third party, who at the same time executed a conveyance to the said Isaac, the object being to transfer the title from her to her husband. The deed executed by herself and husband was defective in not being acknowledged by him, and in being in all respects her deed except in the mere signing of the same by him. The parties intended that the deeds should be prepared and executed in such manner as to be effectual for the conveyance of the estate, and that they were not so drawn and executed was matter of accident and mistake. The two deeds were taken by the said Isaac, enclosed in an envelope, and with the knowledge of Mrs. Dickinson placed in the hands of a depositary to be kept till called for. It did not appear that she received any consideration for her deed. The said Isaac occupied the premises from that time till his death in the year 1838, and expended, in making an addition to a house thereon and in repairs, from $1,000 to $1,200. The property was worth about $800 at the time when the deeds were executed. Mrs. Dickinson occupied the premises after the death of her husband until her own death in 1856. Shortly before his death the said Isaac made his will, by which he devised and bequeathed all his estate real and personal to his wife for life and after her decease to the petitioner. The premises, after his death, were inventoried and appraised as part of his estate, with the knowledge of Mrs. Dickinson and without any dissent on her part, and were distributed to the petitioner subject to her life estate. She often after this spoke of the premises as belonging to her for life and in fee to the petitioner, though it appeared that she had sometimes claimed them as her own and denied the petitioner's right. In the year 1852, she executed two conveyances of adjoining land, in which the land in question was referred to as belonging to the heirs of Isaac Dickinson. The respondents, who

were in possession of the premises, were heirs at law of Mrs. Dickinson, or held by purchase from her heirs.   Immediately after the death of  Mrs. Dickinson the petitioner had the two deeds recorded.

The superior court made a special finding of the facts and reserved the case for the advice of this court.

*R. I. Ingersoll* and  *C. R. Ingersoll,* for the petitioner.

1. It is within the general jurisdiction of a court of equity to grant relief and supply defects, where by mistake the parties have omitted any act necessary to give validity and effect to written instruments.   1 Sto. Eq. Jur., §§ 136, 166. *Holabird* v. *Burr,* 17 Conn., 559.   As where a seal has been omitted in the execution of a deed.   *Montville* v. *Houghton,* 7 Conn., 543.   Or a proper attestation.   *Watson* v. *Wells,* 5 Conn., 468.   Or an acknowledgment.   *Sumner* v. *Rhodes,* 14 Conn., 135.

2. Conveyances of the lands of married women are, equally with other written instruments, subjects of this relief.   The principal upon which such relief is granted, is clearly distinguishable from, and not inconsistent with, that which governs a court of equity in refusing to enforce against a married woman her executory contracts for the sale of her land; as in *Butler* v. *Buckingham,* 5 Day, 492, and  *Martin* v. *Dwelly,* 6 Wend., 9.   For the protection of a wife from the coercion of her husband, our statute authorizing the conveyance of her lands requires an execution and acknowledgment on her part as well as on his; the statute of New York going still further, and, in analogy to the common law formalities when a fine was levied of the wife's land, providing an additional guard against the husband's influence, by the requirement of a separate and private examination of the wife.   And it is because her covenants to convey, or, at common law, to levy a fine, are not protected by such evidences of her freedom, that courts of equity have refused to execute them against her.   *Reeve's Dom. Rel.,* 98, 112.   In such cases there is no mistake to be remedied, no omission to be supplied.   The parties have done all that they intended to do.   The diffi-

culty is, that they have attempted to do what the law has not authorized them to do, and have not intended to do what the law gave them power to do.  But in the present case, the parties intended to do, and lived and died in the belief that they had done, every act necessary to give validity to their deed.  It was solely by mistake and accident that any such act was omitted.  It is the correction of an executed agreement, not the performance of an executory one that is sought.  It was not intended as an agreement only to convey, but as an actual present conveyance of all their right and title.  *Wadsworth* v. *Wendell*, 5 Johns. Ch., 224.  *Mc-Call* v. *McCall*, 3 Day, 402.  The doctrine that a married woman's deed cannot be corrected in equity, because she has no power to make a contract to correct it by, would result in the absurdity of validating every well executed deed of the lands of a married woman, in the literal shape in which it was written, however mistaken or careless the draftsman may have been in expressing the intention of the parties.

3.  But here there has been no omission on the part of the wife of any act necessary to give due validity to the convey-ance.  She has signed, sealed and acknowledged the instru-ment as her free act and deed, and her independence of mar-ital coercion is fully evidenced by all the formalities required by the statute.  In fact, during her subsequent life, and especially after she became sole, she always treated the instrument as a valid deed to transfer the estate.  Is it for her representatives to prevent the operation of her " free act " and defeat her admitted intentions, by availing themselves of a mistake, not on her part, which affected no act of hers and in no way subjected her rights to any prejudice.  2 Saund., 180, note 9.  This court in *Woodward* v. ·*Camp*, 22 Conn., 457, gave effect to a deed of a married woman, although there had been no delivery on the part of the husband, but, on the contrary, a refusal by him to make a delivery.  The delivery by the wife was allowed to operate, at least " so far as her interest was concerned," without a delivery by the husband ; and this, too, in favor of mere volunteers.  And Reeve (Dom. Rel., 98,) says, in laying down the general prin-

ciple on the subject, " Whenever the aforesaid marital right can be affected, and whenever we can presume a possibility of coercion, her contracts are utterly void ; but if we can find a case where no marital right can be affected, and every presumption of any possible coercion is removed out of the way, the wife is bound."

4. But if the relief sought was the enforcement of an agreement of the husband and wife, the rule precluding the interference of a court of equity in such case, being intended for the protection of the wife solely, cannot protect her grantee, or the grantee of her heir, with notice. *Annan* v. *Merritt*, 13 Conn., 478.

5. Upon the faith of this instrument the husband, and devisor of the petitioner, expended upon the premises a large sum of money, greater than the original cost of the land, in additions and improvements. This of itself would be sufficient to take an agreement out of the statute of frauds ; (*Annan* v. *Merritt,* supra ;) and raises here an equity in favor of the petitioner superior to that of the respondents, who are mere volunteers. The transaction is also of the nature of a family settlement, which is favored in equity. *Mc Call* v. *Mc Call,* 3 Day, 402.

*Baldwin,* for the respondents.

The petition is in favor of a volunteer, not a purchaser for a valuable consideration, seeking to render a void instrument, executed by a married woman, available to give him a title to her real estate. The respondents, as her heirs at law, have the legal title, and, as they claim, a superior equity. To entitle the petitioner to relief he must have some equity superior to that of the respondents ; (1 Story Eq. Jur., § 176 ;) and must not be a mere volunteer without value.

The remedial power of equity does not generally extend to the supplying any circumstance for the want of which the legislature has declared the instrument void, for otherwise equity would defeat the very policy of the legislative enactment. 1 Sto. Eq. Jur., § 177. In such cases equity can relieve only on the ground of an agreement, for a valuable consideration,

which the defective instrument was intended to carry out. As an instrument of conveyance the defective deed is equally void in equity and at law. But if it appear to the court to have been intended to carry into effect a contract founded on a valuable consideration, equity will compel the execution of the contract. Before this can be done, it must be shown that such an agreement has been made by a party capable of contracting in some other form than the prescribed one which has not been complied with. In this case Mrs. Dickinson, being a married woman, had no power of affecting her title by any agreement or by any conveyance except in precise conformity with the requirement of the statute. If the instrument is void, there is no agreement therefore to be enforced. This has been often decided, both in this state and elsewhere, and is now believed to be fully settled. *But-ler* v. *Buckingham*, 5 Day, 492. *Watrous* v. *Chalker*, 7 Conn., 224. *Annan* v. *Merritt*, 13 id., 478. *Martin* v. *Dwelly*, 6 Wend., 9. *Lane* v. *McKeen*, 15 Maine, 304. 2 Sto. Eq. Jur., § 1391. 2 Kent's Com., 168.

The expenditure of money by Isaac Dickinson, the husband, in repairs and improvements on the property, raises no equity, either in his own favor, if he were before the court, or in that of the petitioner, his devisee. It was no more than reasonable that the husband, occupying the premises so long, should spend his own funds in making the residence more comfortable for himself and wife. There are no creditors to be affected. He had a right to expend his money in that manner for the benefit of his wife if he chose to do so.

STORRS, C. J. The instrument which the superior court is solicited to correct, was a deed of a married woman, purporting in the body of it to be her deed only, and acknowledged by herself alone, but executed by her and her husband, conveying her real estate to a third person who immediately deeded it to her husband; neither transfer resting upon any actual consideration. The petitioner is a devisee of her husband; the respondents are heirs of the wife; so that each is a mere representative of one or the other, and has no better

position in a court of chancery than his predecessor would hold if living.

Under these circumstances it is objected on the part of the respondents, that the functions of a court of equity will not be set in motion as between parties thus situated. It is a familiar doctrine that chancery will not enforce voluntary contracts *inter vivos;* and that, at all events, where a gift is imperfect from one living person to another, equity will leave the donee where it finds him. Such a party having acquired his imperfect title without the payment of any actual consideration, or under such circumstances as raise no equitable obligation against the giver, has in reality no equity. This general principle has been specifically applied in the case of petitions for the correction of defective voluntary agreements, (1 Story Eq. Jur., § 176,) and such an application seems to be an inevitable consequence of the general rule. Equally irresistible is the inference that the aid of chancery will not be extended to a mere volunteer because the respondent is a volunteer also. The latter is, in such a case, a mere representative of the giver, but as such stands in as good a position as the party whom he represents. Or, as the reason is sometimes less accurately stated, the equities of the volunteers are equal, and as between equal equities chancery remains indifferent and stationary.

The expenditure by the husband on the real estate, after the pretended conveyance to him, cannot vary the case. It could not be maintained that, as between husband and wife, such a circumstance would entitle the former to a conveyance from the latter.

In general an agreement of a married woman relative to her real estate, although concurred in by her husband, is absolutely void ; invalid for reasons of policy, quite as cogent, to say the least, as those which justify the avoidance of contracts under the statute of frauds. By express legislation, however, an exception is made in this state in favor of deeds executed by married women jointly with their husbands, under the hands and seals of both, and by both acknowledged, and duly recorded. Such deeds are validated.

(Rev. Stat., tit. 29, § 16.) But will chancery supply the defect of any of these essential requisites on the ground that the omission occurred accidentally, and that the parties intended to make a valid deed? There is nothing in the origin of the mistake to entitle it in a peculiar manner to the remedial activity of a court of chancery. It would seem to have been solely due to an ignorance of the formal requisites of such a conveyance. If the present defect were to be cured on that ground, any other and all formal deficiencies occurring through like ignorance should be supplied, until in some cases an entire agreement might be thus judicially developed in order to carry out the good intentions of the contracting parties.

But, at the threshold of this inquiry, we are met with the established doctrine that equity will not contravene the positive enactments or requirements of law and defeat its policy, by supplying, under the guise of amending defective instruments, those deficient elements of form without which the agreement is absolutely void, even as between the parties to it; that it will not fabricate for contracting parties those essential ingredients of a contract, without which in the eye of the law there subsists no valid contract whatever. In such cases the intent of parties to conform to the enactments or rules of law will not avail them, and, having fallen short of its requirements, they have consummated no agreement at all.

The leading case on this subject is that of *Hibbert* v. *Rolliston*, (2 Brown's Ch. R., 571,) in which the court refused to validate, on the score of making an instrument conform to the intent of the parties, a mortgage of a ship, which did not contain a recital of its registry. An English statute, with a view to sustain its system of partiality to vessels belonging to British owners, made all bills of sales of vessels not containing a recital of their registry-certificate, " utterly null and void." It was contended in the case cited, that the intention of a mortgagor to give a valid security raised an equity in favor of the mortgagee. The answer to the bill admitted the intent and the mistake. But, as an act of Parliament

stood in the way of the supposed equity, the court dismissed the bill.    The same doctrine, in a case not distinguishable from the last, was asserted not long after in *Ex parte Bulteel*, (2 Cox, 243,) and again in *Thompson* v. *Leake*, (1 Madd. Ch., 39.)   In the latter the court say emphatically—" The act of Parliament destroys the contract when not according to the prescribed form; a man has not, as in other cases, a contract to stand upon."   Similar decisions have been rendered in response to applications to reform agreements void under the English Annuity Act.   In this country the general doctrine has never been questioned.   It was acted upon in *Bright* v. *Boyd*, (1 Story's R., 478,) in which the court refused to validate an administrator's deed, the administrator having made a void sale through neglect to give bonds before proceeding to make conveyances.

We have no doubt that the rule, which, by creating an arbitrary disability, protects married women from the alienation of their real estate through the acts or coercion of their husbands, is so far founded on policy as to disqualify courts of equity to validate instruments made in contravention of the rule.   In fact, in *Bolton* v. *Williams*, (2 Ves. Jr., 156,) the court declined to make good against a married woman an agreement bad at law.   But it sometimes happens that where equity is thus compelled to yield to the absolute requirements of law, restraining its efficacy in reforming agreements, some other agreement behind the defective contract may subsist, of which equity can lay hold, and thus indirectly, though in strict conformity with established principles, afford a remedy for the deficiency.   A defective deed is sometimes treated practically as an executory contract for the sale of land and its execution is decreed.   We confess that it seems to us that this proceeding is not the reformation of a deficient instrument, but belongs rather to the branch of equity jurisprudence which relates to the specific perform. ance of contracts; to the performance of contracts of which the defective instrument is the evidence or memorandum.

In the present case this principle will not avail the petitioners.   If they resort to an agreement lying back of the

deed, they will bring to light only a contract legally void. For it is not to be denied that the executory agreement of a married woman concerning her real estate, though assented to by her husband, is absolutely a nullity; a proposition which, as we have already stated, is true of all the contracts of married women other than those which the statute expressly validates.    This court so held in terms, many years ago, in a decision approved in other states, (*Butler* v. *Buckingham*, 5 Day, 492,) and the doctrine of which is adopted by the leading American Commentators, (2 Story Eq. Jur., § 1391, 2 Kent Com., 168;) while the supreme court of New York have refused to regard the unacknowledged deed of a married woman as the proper basis of a decree of specific performance.    (*Martin* v. *Dwelly*, 6 Wend., 9.)    The inability of courts of chancery to enforce a married woman's covenants, is, in the case just cited, discussed at large and distinctly asserted.    In fact, it would hardly seem to need authority to determine that, if the defective deed of a married woman cannot as such be corrected, no executory agreement of hers evidenced by the deed can be enforced against her. The same policy which would destroy a contract in the shape of a conveyance lacking certain requisites, would be equally fatal to an agreement to make such a conveyance.

We advise therefore that the bill be dismissed.

In this opinion the other judges concurred.

Bill dismissed.