Corby v. Drew.

EMMONS B. CORBY et al.

*v.*

STEPHEN H. DREW et al.

The court will not, as against a married woman, decree specific performance of a contract entered into by her for the sale of her lands, she refusing to execute a conveyance for the same, whether her husband has signed the contract of sale or has refused to sign it.

On final hearing on pleadings and proofs.

*Mr. James M. Trimble,* for the complainants.

*Mr. Robert H. McCarter,* for the defendants.

STEVENS, V. C.

This suit is brought to enforce the specific performance of an agreement to convey fifty acres of mountain land, situate at Pompton, for the consideration of $500. The title was vested in Stephen H. Drew, Thomas F. Drew and Rhoda E. English, who each, at the time the agreement was made, owned an undivided sixth interest therein in fee-simple; in Cynthea M. Rowe, who owned an undivided two-sixths interest therein in fee-simple, and in Eliza Drew and her son George, who together owned the remaining one-sixth, Eliza having a life interest therein and George the remainder.

The agreement bears date on May 24th, 1893. Although it stipulates for a conveyance of the entire fee, it is signed neither by the wives of Stephen and Thomas nor by the husbands of Mrs. English and Mrs. Rowe nor by George. It is signed by Stephen and Thomas Drew, by Mrs. English and by Mrs. Rowe, who are brothers and sisters, and by Eliza Drew, who is the widow of Andrew Drew, a deceased brother.

Performance is resisted, first, on the ground that it would be inequitable to enforce the agreement against the defendants, for the reason that between the day it bears date (May 24th, 1893) and the day fixed for its performance (July 24th, 1893), it was discovered that the land was much more valuable than the owners supposed it was, and second, on the ground that the court cannot compel a conveyance from Mrs. English and Mrs. Rowe because they are married women; that it cannot compel a conveyance from George Drew and the respective wives of Stephen Drew and Thomas Drew because they never signed the agreement, and that consequently there ought not to be any decree whatever against any of the parties, on the principle that where a large part of the property or a large interest in the property cannot be conveyed, the court will not decree a specific

performance as to any of it, but will leave the parties to their remedy at law. *Fry Spec. Perf. 141.*

The first ground of defence is maintainable only upon proof that the land is really much more valuable than it was supposed to be by the vendors at the time they executed the agreement. I cannot find any such proof in the case. The proof amounts to no more than this : That the vendors, all but one of whom were brought up on an adjoining farm, knew this land to be rocky mountain land and believed it to be valuable only for the wood that could be taken from it; that whether the rock was granite or trap or limestone or anything else they did not know; that the vendees, who were quarrymen and known by the agent of the vendors to be such, knew that it contained a superior kind of granite, worth, according to the witness Brown, eighty-five cents a cubic foot delivered on the cars, and that the vendors bought it because of this knowledge. The defendants' case goes no further.

No evidence was given as to what this stone was worth in the ground, and no attempt was made to show that land containing this stone was worth more per acre than complainants had agreed to pay for it. There was evidence to the effect that this same kind of granite was found in another quarry near by, and the defendant Corby testified, without much knowledge on the subject, however, that the whole of Pompton was underlaid with it. I think it is plain that this part of the defendants' case is not sustained by the proofs.

It was also insisted on this branch of the case that the complainants should have communicated to the vendors all that they had discovered, and that their failure to do so was such concealment as would in itself prevent specific performance. I can find no proof of concealment sufficient to bar a decree for specific performance. The evidence is that before they entered into the agreement complainants received permission from Mr. Rowe, the husband of the defendant Cynthia, who was acting for the vendors, under powers extremely vague, to make blasts with a view of testing the character of the rock. These blasts, which they made before purchasing, proved satisfactory. Exactly

what they told Mr. Rowe they had found is a matter in dispute. While they probably did no more than say to him that the rock .would answer their purpose, they did not conceal from him the fact that they were buying it to quarry on.

The letter of December 14th, written by Mr. Corby to Mrs. Rowe, on which counsel laid considerable stress in his argument, in view of the fact that Rowe was informed of the use which complainants proposed to make of their purchase, appears to me to be without significance.

I now come to a question of considerable difficulty, viz., how far the court may, under our statutes, compel a married woman specifically to perform a contract to convey land. This question is presented in two phases. The husband of Mrs. English, the owner of one-sixth, refused to sanction the contract *ab initio.* The husband of Mrs. Rowe, on the contrary, was the agent who effected the sale, and, while he did not join in the agreement, he so far committed himself to it in writing as to give a receipt for $100 of the purchase-money, which he declared to be

"on acct. on sale of fifty acres of mountain land belonging to the estate of the late Henry Drew and being situate on Federal Hill, Pompton township. Contract price $500,"

and which he signed "Francis Rowe."

At common law the wife could only pass her freehold estate by fine and common recovery. *2 Kent Com. 150.* It was said by Chancellor Green in *Moore* v. *Rake, 2 Dutch. 578,* that previous to the year 1743 a *feme covert* could not make a valid conveyance of her interest in land in the then Colony of New Jersey; that, by an act of that year, it was provided that all deeds of conveyance, made or to be made by a man and his wife of the estate of the wife, when acknowledged in a particular manner before certain officers, should be recorded, and should be good and sufficient to convey the lands thereby intended to be conveyed. The construction there put by the court of errors, upon that act and upon the act in *Paterson's Revision,* was that the deed of a married woman, though duly acknowledged, made without the co-operation of her husband, would not pass her

title to real estate. The decision was placed not upon any defect in the acknowledgment of the deed then under consideration, but upon the fact that the husband had not joined with the wife in executing it. This appears to be decisive of the case of Mrs. English, whose husband has always refused to join and who has never done anything which the court can take hold of in order to compel him to join. For it is expressly provided by the fourteenth section of the Married Woman's act that

"nothing in this act contained shall enable any married woman to execute any conveyance of her real estate * * * without her husband joining therein as heretofore,"

except in those instances for which express provision is made, of which the present is not one. Surely the court will not compel a married woman to make a conveyance which she has always been under a disability to make, and which, when made in point of form merely, will be an absolute nullity.

Mrs. Rowe's case is different. Mr. Rowe, as I have shown, has signed a receipt which would be sufficient to bind him. The court could, therefore, compel him to join with his wife in making a conveyance, and so the wife's conveyance would not be open to the objection just stated. Notwithstanding this difference, I am of opinion that, upon another ground, the court must refuse a specific performance as against Mr. and Mrs. Rowe.

In *Wooden* v. *Morris, 2 Gr. Ch. 65,* it was held that the agreement of a *feme covert* made *with* the assent of her husband, for the sale of her real estate, is absolutely void at law, and that courts of equity will not enforce it against her. In that case the contract was entered into under the hands and seals of both husband and wife. It arose before the act of 1852. The case of *Pentz* v. *Simonson, 2 Beas. 232,* arose after that act. There, too, the contract had the assent of the husband. Chancellor Williamson decided that, notwithstanding the act of 1852, the old law remained unchanged.

The act of 1852 did not, therefore, vest in the married woman the power of making contracts, in regard to her real estate,

enforceable in equity. It is, however, contended that the fifth
section of the Married Woman's act of 1874 has done so. This
section provides as follows:

> "Any married woman shall, after the passing of this act, have the right to
> bind herself by contract in the same manner and to the same extent as though
> she were unmarried, and which contracts shall be legal and obligatory and
> may be enforced at law or in equity by or against such married woman in her
> own name apart from her husband."

The argument is that the right to bind herself by contract
not being restricted to any particular species of property or to
any particular subject-matter, is unlimited except as to prom-
ises involving endorsement, suretyship and debts not her own,
specially excepted by the act itself, and that, therefore, she has
the right to bind herself by a contract to convey land.

Now, so far as land is concerned, it is to be noticed that her
power in respect of it is not unlimited. It is, in the first place,
as I have already shown, restricted by the fourteenth section of
the same act, which declares that nothing therein contained shall
enable any married woman to execute any conveyance of her
real estate without her husband joining therein as theretofore.
But if she cannot convey without the concurrence of her hus-
band, it would seem to follow that she cannot *agree* to convey
without that concurrence. At all events it is true that if she
can make herself liable in damages for non-performance at law,
she cannot, acting alone, bind herself by an agreement which a
court of equity will enforce by decreeing a conveyance.

In the second place, there is, as it seems to me, another lim-
itation upon the power of the court to compel a performance
arising out of the act respecting conveyances. The ninth section
of that act, revised and approved on the same day on which the
Married Woman's act was revised and approved, provides that
no estate of a *feme covert* in any lands, tenements or heredita-
ments *shall hereafter pass* by her deed of conveyance without a
previous acknowledgment made by her, on a private examination
apart from her husband, that she signed, sealed and delivered
the same as her voluntary act and deed, freely, without any fear,

threats or compulsion of her husband. It has long been under-, stood, as one of the consequences of this legislation, that an acknowledgment by a *feme covert* is of the *essence* of her conveyance. In this respect it differs altogether in its operation and effects from other acknowledgments. Its object is the protection of the wife from the compulsion of the husband. But it is obvious that if it be held that, while the wife may not execute a *conveyance* without acknowledgment, she may execute an *agreement* to convey without acknowledgment, which agreement she will be compelled specifically to perform, the protection designed to be afforded by the ninth section of the act respecting conveyances is at an end.

The reason upon which Chancellor Williamson based his decision in *Penz* v. *Simonson, supra,* is still applicable. He says: "The statute provides that a married woman shall convey her lands only by joining with her husband in a conveyance and by an acknowledgment upon a private examination apart from her husband that the deed was executed freely, without fear, threat or compulsion. * * * It is obvious that if a contract thus entered into [that is, entered into without the full consent of the wife, ascertained in the mode pointed out by statute] by a married woman is to be specifically enforced in equity, the statute [of 1852], so far from operating, as its title imports, 'for the better securing the property of married women,' will strip them of all the protection with which the jealousy of the common law guarded their rights against the authority and control of the husband. She will, in fact, be in a more unprotected condition against the control of her husband in regard to her separate property than she is in regard to her estate in the property of her husband."

Conceding, therefore, that the married woman might, under section 5 of the Married Woman's act, be liable at law for a breach of her contract, it does not follow that equity would be willing or able to compel a conveyance. If the wife affix her ·hand and seal to a deed and deliver it unacknowledged, it is conceded that no estate passes. She must first declare, and declare, I should think, truly, that she signs and seals the paper as her

*voluntary* act and deed. Assuming that the court might, in a proper case, compel a married woman, as it might compel anyone else, to put her hand and seal to a deed, will it go further and compel her to assert that to be true, in words, which is false in fact? Will the court say to her, we know you are unwilling to convey—you have so declared under oath; we know you will *not* convey unless the court directs you to do so under pain of imprisonment, still you must *say* that you *do* convey freely and voluntarily? Is not this kind of compulsion somewhat at variance with an act which declares that

" no estate of a *feme covert* in any land * * * shall hereafter pass by her deed without a previous acknowledgment made by her * * * that she signed, sealed and delivered the same as her voluntary act and deed, freely " &c. ?

How can it be asserted that this beneficial provision of the revised statutes, re-enacted on the same day on which the Married Woman's act was enacted, was intended to be practically nullified by section 5 of the latter act?

It may be suggested that the court will inquire of the wife whether she signed the agreement voluntarily and without the compulsion of her husband, and that if it finds she has it will direct a conveyance. This would be substituting the discretion of the court for the express statutory requirement. It would, besides, fail to meet the real difficulty. The question is not whether the agreement to convey was, as a matter of fact, entered into voluntarily, but whether the deed to be given in pursuance of it shall have endorsed upon it a certificate which the attitude of the married woman brands as untrue.

Whether, on breach of a married woman's agreement to convey, an action at law for damages could be sustained, is a question not involved in this suit. It is manifest that the difficulty here so apparent would not arise and that the case would be decided on other grounds. As the agreement under consideration was not acknowledged, the effect of section 23 of the "Act respecting conveyances" has not been considered.

In the case of *Union Brick and Tile Manufacturing Co.* v.

*Lorillard, 17 Stew. Eq. 1,* another phase of this same question was presented to this court. It was the case of a wife who had made an agreement to convey, her husband agreeing to join in the conveyance. Before performance was sought to be enforced the husband died. The chancellor, thinking that his death had removed the impediment to performance, decreed it. He was evidently of the opinion that if the husband had lived the agreement would have been incapable of performance in equity. He says: "At the death of the husband the limitation upon the execution of the contract by conveyance, and with it the objection to a specific performance of the contract, is removed." When the case went to the court of errors the court affirmed the decree on the second ground upon which the chancellor rested his decision. It held that the wife had in effect re-executed the contract after her husband's death, and was for that reason bound to perform it. It hesitated to go even as far as the chancellor had gone, declaring that it was not necessary to pass upon the validity or invalidity of the original contract, and it left the question as an open one. If, in the estimation of that court, it was doubtful whether the wife's contract, made in his lifetime, could be enforced after his death, it must, I think, to say the least, be open to much greater doubt whether it could be enforced in his lifetime.

The conclusion thus reached is fortified by that line of cases in which it is held that where a married woman has attempted to convey her estate, but the conveyance is defective for want of compliance with statutory requisites, equity will not lend its aid to supply the defect. *Hamar v. Medsker, 60 Ind. 413; Dickinson v. Glenny, 27 Conn. 104.*

I am therefore of opinion that the court cannot specifically enforce the contract against Mrs. Rowe.

The question then arises whether this is a contract which the court should enforce against anyone. The situation is this: As to an undivided three-sixths, there can be no performance whatever; as to another sixth, there can only be performance against the tenant for life; as to the remaining two-sixths, there can be performance against the husbands in respect to their ownership

of the fee, but not against the wives in respect to their dower rights.

In this situation it seems to me that the court, in the exercise of a reasonable discretion, ought to refuse to interfere at all. It should leave the parties to their remedy at law; more particularly as the agreement is that the entire fee shall be conveyed by warranty deed, and inasmuch as it is at least doubtful whether, under the very vague powers of the agent, he had any right to deliver to the purchasers an agreement by which the grantors bound themselves to convey the whole interest until he had secured the signatures of all who were interested and could be bound. Without reference to the fact that he did not sign himself, and did not obtain the signature of Mr. English or of the wives of the respective owners of two of the undivided sixths, he did not procure the signature of George Drew, who was the owner in fee in remainder of another undivided sixth, and whose signature was as necessary to a conveyance as was that of any other tenant in common.