## COURT FOR THE CORRECTION OF ERRORS

#### OF THE

## STATE OF NEW-YORK.

Argued in September and October, and decided in December, 1830.

CONTINUED FROM THE FIFTH VOLUME.

MARTIN, *appellant,* and J. DWELLY and others, *respondents.*

A deed of lands executed by a *feme covert*, together with her husband, but *not acknomledged* by her pursuant to the statute, conveying lands belonging to the *feme*, and the payment of the consideration money by the grantee, is not such an *agreement to convey,* as will be enforced against the heirs at law of the *feme,* by a decree for specific performance.

A covenant entered into by a *feme covert* except as to property held by her as her *separate estate,* or subject to her exclusive control, or as a *trustee,* is absolutely void.

APPEAL from chancery. In February, 1827, the respondents commenced an action of ejectment for the recovery of certain premises in the possession of the appellant, claimed by them as the heirs at law of their mother *Miriam D_lly*. The appellant filed a bill in chancery to obtain an injunction staying the suit at law, and to compel a conveyance from the respondents to him of the premises claimed. The appellant alleged that *Miriam Dwelly*, the mother of the respondents, was his sister, and one of eight children, and heirs at law of Moses Martin, who died intestate in 1792, seised

ALBANY,
Dec. 1830.

Martin
v.
Dwelly.

of various parcels of land; that on the 19th April, 1800, a settlement was agreed upon between the appellant and *Abner Dwelly*, the husband of Miriam, and the said Miriam herself, whereby Abner Dwelly and his wife agreed to sell and convey to the appellant one eighth part of the land whereof the intestate, Moses Martin, died seised, for the consideration of $325; and in pursuance of such agreement, conveyed the same to the appellant, under their hands and seals, and severally signed a receipt acknowledging the payment of that sum, which was paid by the appellant, and which he stated he verily believed was applied to the use of the said Miriam; that Miriam Dwelly entered into the agreement, and executed the conveyance and release of the premises *voluntarily*, without any fear or compulsion of her husband; that the appellant took possession of the premises, using them as his own, selling and conveying away parts thereof, and occupying the remainder without interruption or molestation, from Abner Dwelly and Miriam his wife, who departed this life, the said Miriam in October, 1825, and the said Abner in June, 1826, without having executed to the appellant a deed of the bargained premises, *duly acknowledged*, according to the provisions of the act in such cases made and provided, and that they left eight children and one grand-child, the respondents in this case; and that the appellant laid out considerable sums of money in the improvement and cultivation of the bargained premises, and was proceeding to make other improvements when the action of ejectment was commenced. The bill prayed a discovery, and that the respondents might be compelled specifically to perform the agreement made and entered into by Abner Dwelly and Miriam his wife, with the appellant; to release to the appellant the premises in the agreement specified, and be restrained from bringing any actions of ejectment against the appellant or those claiming under him for the recovery of the bargained premises; and that in the mean time they be restrained from further prosecuting the suit already commenced, and for general relief. Chancellor Jones allowed the injunction prayed for,

The respondents in their answer admitted that on the 19th April, 1800, *Abner Dwelly* agreed to release his interest in certain lands designated as the real estate whereof Moses Martin died seised; that a deed was accordingly drawn embracing all the lands of which Moses Martin died seised, which was signed by the said Abner Dwelly and Miriam his wife, but the said Miriam declared that *she would not acknowledge the due execution thereof*, as the respondents stated they had always been informed and believed truly; and further that the appellant frequently made application to the said Miriam to acknowledge the execution of the deed in due form of law, which she absolutely refused to do; and frequently and uniformly declared she never would acknowledge said conveyance, and that her children should, after her death, prosecute her claim, if she did not survive her said husband; which declarations were often repeated by her to the appellant, as the respondents were informed and believe. The respondents denied that the consideration money of the conveyance was paid to the said Miriam, or went particularly to her use or to the use of her children; that Abner Dwelly was at all times in easy circumstances as to property, and did not require that money for the maintenance of his wife and children. The respondents in their answer also charged misrepresentation and concealment of facts on the part of the appellant at the time of the obtaining of the deed in relation to the property of Moses Martin, the father of the appellant and of Miriam Dwelly.

In October, 1828, Chancellor Walworth dissolved the injunction; from the order dissolving the injunction the complainant below appealed.

The cause was argued in this court by

*J. Crary*, for the appellant.

*S. Stevens* and *D. Russell*, for the respondents.

The following opinions were delivered:

By Mr. Justice SUTHERLAND. The general question presented by this case is, whether a deed of a *feme covert*, not executed and acknowledged according to the provisions of

the statute, 1 *R. L.* 369, and therefore void and inoperative at law, is to be considered and treated in a court of equity as a valid *agreement to convey,* the specific performance of which will be decreed as against the *feme covert* or her heirs.

By the common law a *feme covert* could not by uniting with her husband in any deed or conveyance, bar herself or her heirs of any estate of which she was seised in her own right, or of her right of dower in the real estate of her husband. This disability is supposed to be founded in the principle that the separate legal existence of the wife is suspended during the marriage, and is strengthened by the consideration that from the nature of the connexion, there is danger that the influence of the husband may be improperly exerted, for the purpose of forcing the wife to part with her rights in his favor. The law therefore considers any such deed or conveyance as the act of the husband only, although the wife may have united in it, and restrained its operation to the husband's interest in the premises, and gives to it the same effect as though he alone had executed the conveyance.

The only mode in which a *feme covert* could at common law convey her real estate, was by uniting with her husband in levying a fine. This is a solemn proceeding of record, in the face of the court, and the judges are supposed to watch over and protect the rights of the wife, and to ascertain by a private examination that her participation in the act is voluntary and unconstrained. This is the principle upon which the efficacy of a fine is put by most of the authorities. 3 *Cruise's Dig.* 153, *tit.* 35, *ch.* 10. 2 *Inst.* 515. 1 *Vent.* 121, *a.* But whatever may be the foundation of the doctrine, it is now fully established.

Our statute declares that *no estate of a feme covert* residing in this state shall pass *by her deed,* without a previous acknowledgment made by her before a proper officer apart from her husband, that she executed such deed freely without fear or complusion of her husband. 1 *R. L.* 369. This provision, it will be observed, is an enlargement and not a restraint of the common law powers of a *feme covert.* It authorizes a less formal mode of conveyance than was known to the common law. It gives to *her deed, when duly acknowl-*

_edged,_ the same power and effect, _as a fine;_ but if not acknowledged according to the directions of the statute, it declares that no estate shall pass by it. It leaves it as it would have stood at the common law, if the statute had never been passed, absolutely void and inoperative.

It was conceded that such must be the consequence at law; but it was contended that a court of equity would consider it as an agreement to convey, and if it was shown to have been voluntarily made for a valuable consideration, would compel the wife or her heirs specifically to perform it. This doctrine appears to me to be unsound in principle and unsupported by any color of authority. A _feme covert,_ by the principles of the common law, is not only incapable of conveying her real estate by deed, but she cannot, as a general rule make a valid contract of any description in relation either to real or personal property. This disability results from the nature of the matrimonial connexion. In contemplation of law, the wife is hardly considered as having a separate legal existence. She and her husband constitute but one person. She cannot bind either her husband or herself by any contract. She may execute a naked power, and as to her _separate estate,_ that is, such estate, either real or personal, as is settled on her for her separate use, without any control over it on the part of her husband, a court of chancery for certain purposes will consider her a _feme sole,_ and her contracts in relation to it may be binding; 5 _Day's R._ 496; 2 _Kent's Comm._ 137 _to_ 141; 1 _Johns. C. R._ 450; 3 _id._ 77; 17 _Johns. R._ 548; but her own lands, or her right of dower in the lands of her husband are not her separate estate, within the meaning of this rule. It certainly will not be contended that the conveyance in this case can have any greater effect than an express covenant on the part of the husband and wife to convey; and I apprehend that an examination of the cases will show that such a covenant made during coverture would be absolutely void against the wife and her heirs, both at law and in equity. The greatest extent to which the English courts have ever gone, is to hold that an action would lie against a wife after the death of her husband, upon a covenant of warranty contained in a fine, execu-

ted by her and her husband, though she was a *feme covert* when it was levied.    This was held in the case of *Wotton* v. *Hele,* 2 *Saund.* 178, and 1 *Mod.* 290.    It was also held in some of the earlier cases, that if baron and *feme* joined in a lease for years *by indenture* of the wife's land, and *she accepted rent after his death,* she was liable to the covenants in the lease. *Greenwood* v. *Tyber, Croke, J.* 563, 4.    2. *Saund.* 180, *note* 9. The acceptance of the rent is a confirmation of the lease, and may be considered equivalent to a new execution and delivery, though the wife was at liberty after her husband's death, to avoid or affirm it if she had chosen.

The doctrine that a wife is bound by her covenant of warranty, entered into during coverture, is considered by Chancellor Kent, 2 *Kent's Comm.* 140, as at war with the established principle of the common law ; that she is incapable of binding herself by any contract ; and a contrary doctrine has been expressly held, both in this state and in Massachusetts. *Fowler* v. *Shearer,* 7 *Mass. R.* 21.    *Colcord and another* v. *Swan and wife,* 7 *Mass. R.* 291.    In these cases it was observed, that although the deed of a married woman is *ipso facto* void by the common law of England, yet by the immemorial usage of Massachusetts it would pass her estate, and she would be estopped by her covenants, though no action would lie against her for a breach of them.    But the supreme court of this state, in *Jackson, ex dem. Clowes,* v. *Vanderheyden,* 17 *Johns. R.* 167, went still farther, and held that a *feme covert* not only was not liable to an action on the covenants contained in a deed executed and acknowledged according to the statute, by her and her husband, but that she was not estopped by her covenant from setting up any outstanding title to the premises, or any other defence.    Ch. J. *Spencer,* in delivering the opinion of the court, observed, that it was a settled principle of the common law, that coverture disqualifies a *feme covert* from entering into a contract or covenant personally binding upon her.    She may at common law pass her real property by a *fine* duly levied ; and under our own statute, she may also in conjunction with her husband, on due examination before a competent officer, convey her real estate : but such deed cannot operate as an *estoppel* to her subsequently acquired interest in the same land.

There is a class of cases in which, where the husband had expressly covenanted that his wife should join in a fine of her real estate, he has been decreed specifically to perform his covenant, or to suffer imprisonment by way of penalty. *Griffin* v. *Taylor*, *Toth.* 106. *Barrington* v. *Horn*, 2 *Eq. Cas. Abr.* 17, *pl.* 7. *Hall* v. *Hardy*, 3 *P. Wms.* 187. *Morris* v. *Stephenson*, 7 *Ves.* 474. *Withers* v. *Pinchard, cited in Morris* v. *Stephenson.* In most of those cases, however, it did not appear that the wife had refused to unite in the fine; and the only reason on which the decisions are put, is, that it is to be presumed she was consulted by her husband before he entered into the covenant, and gave her assent to it. Lord Cowper, however, questioned this doctrine in *Outread* v. *Round*, 4 *Viner's Abr.* 203, *pl.* 4, cited in 1 *Fonbl.* 293, *note* 7, as did the master of the rolls in *Daniels* v. *Adams, Ambl.* 495. Its soundness was also denied by Chief Baron Gilbert, in his *Lex Prætoria*, 245, and most pointedly by Lord Eldon, in *Emery* v. *Wade*, 8 *Vesey*, 514, and in *Martin* v. *Mitchell*, 2 *Jac. & Walk.* 430. It was conceded by the counsel and by Sir Thomas Plumer, the master of the rolls, that such was not the law at this day. The same opinion had been previously expressed by the same learned judge, in *Howell* v. *George*, 1 *Madd. Ch. R.* 16.

The case of *Baker* v. *Childs*, 2 *Vern.* 61, is the only one which I have been able to find which contains the slightest intimation that a *feme* will be decreed specifically to execute an agreement made by her during coverture. The whole report of that case is this: "Where a *feme covert*, by agreement made with her husband, is to surrender or levy a fine, though the husband die before it be done, the court will by decree compel the woman to perform the agreement." No facts or circumstances are stated. Whether it was an antenuptial agreement between the husband and wife, or an agreement made by them with some third person, it is difficult to discover. It is altogether too loose and bald a case to be entitled to any consideration; and it is said of that case, in 1 *Eq. Cas. Abr.* 62, *pl.* 2, that upon looking into the register's minutes, it appeared that the court made no decree in it; but it was, by consent, referred to Mr. Serjt. Raw-

linson for his arbitration. It is in no point of view, therefore, an authority. The case of *Roupe* v. *Atkinson, Bunb. R.* 163, cited by the counsel for the appellants, was this: A lease for a term of years was assigned to the trustees *before marriage,* in trust that they should make leases for the benefit of the husband and wife. After marriage, the husband and wife assigned the lease to one Sparke for a valuable consideration. After the death of the husband, the widow brought her bill against Sparke, to be levied against this assignment made during coverture, on the ground that no *fine* had been levied. It was held that the assignment by the *cestuis que trust* was in the nature of an appointment, and should bind him in equity as much as if it had been made by the trustees by their direction. It bears no analogy to this case. The anonymous case in *Moseley,* 248, is equally inapplicable. An estate was purchased in trust for the husband and wife and their heirs, and the husband and wife joined in a mortgage to the vendor to secure a part of the purchase money. The mortgagee brought a bill of foreclosure, and the husband and wife put in a joint answer, in which it is to be inferred no objection was taken to the mortgage on account of the coverture of the wife. The husband died pending the suit, and the wife then moved for leave to amend her answer, in order to set up the defence that no fine had been levied. The lord chancellor refused the motion, with the single observation, that though the mortgage was insufficient at law, he should consider the answer that had been put in as equal to a fine. *Penne* v. *Peacock and wife, Cas. Temp. Talb.* 41, was a case of a mortgage given by the husband to the plaintiff upon the lands of his wife, which had been conveyed by her to trustees, with his privity, before the marriage, in trust to pay the rents and profits to her separate use for her life. After the mortgage given, the husband and wife levied a fine of the mortgaged premises, and both declared the uses of the fine to be to the plaintiff, for securing the principal and interest of the mortgage. The wife insisted in her answer that she had joined in the fine by duress of her husband, and that she had no estate in the premises upon which a fine could operate. The suggestions of duress and fraud were not sustain-

ALBANY,
Dec. 1830.

Martin
v.
Dwelly.

ed by the proofs, and it was held as an established doctrine, that the operation of a fine is the same upon trust as upon legal estates. That case also is entirely inapplicable to this.

The precise question, however, involved in this case has arisen in a sister state, and been very ably discussed both by the counsel and the court. I allude to the case of *Butler and Atwater* v. *Buckingham*, 5 Conn. R. 492. It was there held that an agreement by a *feme covert*, with the assent of her husband, for the sale of her real estate, was absolutely void at law, and could not be enforced against her in a court of equity. The defendant in that case, Mrs. Buckingham, as the widow of her former husband Joseph Bryan, had a right of dower in a particular lot of land of which he died seized. She subsequently married Gideon Buckingham, and she and her husband, in January, 1793, *agreed to sell* all her interest in the premises to the plaintiffs *Butler* and *Atwater*, and joined in a penal bond to them; the condition of which was, that if she should quit-claim all her right of dower in the premises to the obligees, then the bond should be void. The petition (which was in the nature of a bill in chancery) stated that the petitioners immediately entered into the possession of said land, and from that time to the date of the petition, a period of more than 20 years, had had peaceable and uninterrupted possession of the same; that they had made valuable improvements thereon, with the knowledge of the defendant and her husband, in full confidence that they would perform their agreement; that Gideon Buckingham, the husband of the defendant, died in 1810; and that she, upon regular and repeated applications, had refused to quit-claim her right of dower, and had recently commenced an action at law to recover the same from the plaintiffs. The petition prayed for a perpetual injunction, or that the defendant should be decreed to convey her right of dower in the premises. Upon a demurrer to this petition, it was held by the nine judges sitting as a court of errors, that the petitioners were entitled to no relief. It was observed by the court that the whole system of the common law was opposed to the doctrine on which the petition was founded; that it was a fundamental principle of the common law that the contract

of a *feme covert* is *absolutely void*, except where she conveys her estate by fine duly acknowledged, or by some matter of record, when she is privately examined in order to ascertain whether such conveyance is voluntary on her part; and it is pertinently said, How absurd then would it be to enforce *such a contract to convey*, made without such examination ! It would be saying that a *feme covert* cannot directly convey her real estate, unless she be privately examined; and yet she can *contract to convey* without such examination, and such contract will be enforced against her. By this mode, the established law in relation to a *feme covert* and her real estate will be completely subverted.

A *feme covert*, in relation to her separate property, that is, property settled to her separate use by deed or will, with a power of appointment, and rendered subject to her exclusive control, and also with respect to property which she holds as trustee without any beneficial interest in her own right, is considered as a *feme sole*, and her contracts in relation to those subjects may be valid, and a court of equity may interfere to enforce them. As to all other matters, they are absolutely void, and it is no less a moral than a legal absurdity, to say that a court of equity will enforce a *void* contract; it is a mere nullity; there is nothing to be carried into execution. The deed of a *feme covert*, not acknowledged according to the statute, forms no consideration for a promise to pay the purchase money; a note given under such circumstances is a *nudum pactum* and void as between the parties. This was expressly adjudged by the supreme court of Massachusetts, in *Fowler* v. *Shearer*, 7 *Mass. R.* 14, and must be so upon every principle applicable to contracts. If an absolute sale consummated by a deed is void, unless such deed is acknowledged in the mode prescribed by the statute, it is impossible that a contract to sell and convey at some future time should be valid.

The language of the master of the rolls, Sir Thomas Plumer, in *Martin* v. *Mitchell*, 2 *Jac. & Walk.* 424, upon the general principle applicable to the contracts of married women, is very strong and explicit. He says, "The acts of a married woman with respect to her estate are perfectly void.

ALBANY,
Dec. 1830.

Martin
v.
Dwelly.

She has no disposing power, though she may have a disposing mind. An agreement signed by her with her husband cannot affect her estate, and cannot give the party a right to call upon her in a court of equity to execute a conveyance, to bar her if she survives, and to bind her inheritance. If an agreement is signed by a person competent to contract, and is for a valuable consideration, but defective in form, there is a remedy in equity; *for you have a valid contract to stand upon.* But with a married woman there can *be no binding contract.* The instrument is not good as an agreement; then how can it be said to bind her?" The same language substantially is used by the court in the case of *Wright* v. *Buller,* 2 *Ves. jun.* 676, and is to be found in all the elementary treatises upon the subject. The cases of *Jackson* v. *Stevens,* 16 *Johns. R.* 114, *Jackson* v. *Cairns,* 20 *id.* 303, and *Doe, ex dem. Depeyster,* v. *Howland,* 3 *Cowen,* 277, shew very conclusively the opinion which has always been entertained in our courts of the absolute nullity of a conveyance or contract made by a married woman in relation to her real estate. In the first case Judge Spencer observed, that the conveyance, although signed and sealed by the wife, was not her deed until she had acknowledged it according to the statute. *It could not bind her as a contract.* She was not confirming an inchoate and imperfect agreement. The deed took its efficacy from the period of her acknowledgment. There was nothing prior, to which it could relate. The other cases are equally strong to the same point. *Vide also* 7 *Johns. R.* 81.

The bill is not framed with a view to the refunding of the purchase money paid by the appellant for the premises in question. It seeks distinctly a specific execution of the agreement, or a perpetual injunction of any suit at law. Whether the representatives of Abner Dwelly could be compelled to refund, it is not now necessary to consider.

I am in favor of affirming the decree, with costs.

By Mr. Senator BEARDSLEY. It is supposed by the appellant that the payment of the consideration money and signing the deed by the husband and wife, amount to such an agreement as will be enforced in chancery by a decree for a specific performance.

I do not understand that in the present case it is pretended there was any agreement to convey, except the agreement evidenced by receiving the money and signing the deed. It is therefore unnecessary to decide whether any case could be presented of an agreement on the part of the wife for the sale of her land, without an acknowledgment as prescribed by statute, that would be enforced in chancery.

I am clearly of opinion that the decision of the chancellor is right. At common law the wife could part with her interest in lands only by joining with her husband in a fine, and it then required a private examination before a judge of the court where the fine was levied. Under our statute, she may join with her husband in a conveyance, and thus pass her estate, provided she is examined privately and acknowledges that she does it voluntarily and without fear or compulsion of her husband.

The object of the statute is to protect the rights of the wife, and generally speaking, any agreement or conveyance which she makes in regard to land, except as prescribed by the statute, is not binding upon her or her heirs, because the law adjudges it made at the instance and under the influence and coercion of the husband.

It appears to me that to sustain this appeal will have the effect of unsettling the whole law in relation to the rights of married women in real estate, and will amount to a virtual repeal of the statute. The wife is deemed to be wholly under the influence of her husband, and it is as necessary for her protection that she should be privately examined before an officer, to ascertain her volition in regard to an agreement, as it is in regard to a conveyance.

I very much doubt whether any agreement could be made with a married woman, in relation to lands, that could be enforced in equity against her. If any agreement could be enforced, it would probably be one where the consideration money was secured for her separate use, and where it should appear not to have been contrary to her interest.

It is not pretended that the present conveyance is of any effect, except as evidence of an agreement that a court of equity will enforce; and in this respect it is nugatory, be-

ALBANY,
Dec. 1830.

Martin
v.
Dwelly.

cause the law adjudges it to have been made at the instance of the husband.

If chancery will enforce such an agreement, I can imagine no barrier that can be erected against the encroachment of the husband, or for the protection of the wife. It fritters away the statute and makes it a dead letter.

Suppose a worthless husband, who keeps his wife in constant fear, should wish to dispose of her estate contrary to her wishes ; he finds a purchaser, and has witnesses ready, and in the presence of the wife agrees with the purchaser to sell him the estate of the wife, and that she shall join in the conveyance; he receives part of the purchase money, or the whole, in the presence of the wife, and puts the purchaser in possession of the property; the wife, from fear of her husband, says nothing, (and from silence the law in ordinary cases adjudges acquiescence;) the husband has a right to control the possession, and such an agreement unquestionably would be enforced against him; and why not against the wife, if she is capable of making a contract ? The whole policy of the law is against this doctrine.

Chancellor Kent says, "Though a wife may convey her estate by deed, she will not be bound by a covenant or agreement to levy a fine or convey her estate." 2 *Kent's Comm.* 141. The agreement by a *feme covert*, with the assent of her husband, for a sale of her real estate, is absolutely *void at law,* and the courts of equity never enforce such a contract against her. 5 *Day*, 492.

It was decided in England, in *Watton* v. *Hele,* 2 *Saund.* 178, that where the wife joined with her husband in a fine to grant her land with covenant of warranty, that after the husband's death an action of covenant would lie against the wife, on the eviction of the grantee, and this case was relied upon by the appellant in this cause. The authority of *Wotton* v. *Hele* has been called in question by courts in this country as inapplicable to our laws, and has been overturned in Massachusetts. 7 *Mass. Rep.* 21, 291. And in our supreme court, in *Jackson* v. *Vanderheyden,* 17 *Johns. R.* 167, it is decided that the wife could not bind herself personally by a covenant in her deed.

On the whole, I do not feel at liberty to depart from the provisions of the statute ; they are wise and salutary, and intended for the protection of the wife against the cupidity and improper influence of the husband.

He that wishes to divest a married woman of her land must take care that the statute is complied with before he parts with his money.

The chancellor's decree must be affirmed.

Whereupon the order of the chancellor dissolving the injunction was *unanimously* AFFIRMED, with costs to be paid by the appellant. Leave however was given to the appellant to amend his bill.