Pentz *v.* Simonson.

---

## PENTZ *vs.* SIMONSON and wife.

Liabilities voluntarily incurred by a married woman will be charged upon her separate estate, but she cannot by her contract make herself personally liable.

The act of 1857, which provides that a *feme covert* may covenant as to the title of her lands, affords the strongest legislative construction that the act of 1852 does not by necessary implication confer upon her the right to dispose of her real estate, or to make contracts in regard to it.

A contract entered into by a married woman for the sale of her estate cannot be enforced.

But equity will charge her separate property with the repayment of money advanced to the wife, at her instance and for her benefit, or on account of her estate.

*Winfield*, for complainant.

THE CHANCELLOR. The bill is filed to enforce the specific performance, by the husband and wife, of a contract made by and between the wife of the defendant and the

complainant for the sale and conveyance of the real estate of the wife. The contract is in writing, bears date on the 19th day of January, 1860, and is executed by the parties under their respective hands and seals.

The contract was signed by the wife, in the presence and with the assent of the husband. The consideration to be paid for the conveyance was $2500, part of which was a mortgage of $1000 upon the premises. Of the sum of $1500 to be paid in addition to the mortgage, $50 was paid at the execution of the contract to the husband in the presence of the wife, and $500 more was subsequently paid to the husband, as the agent of the wife. The property was conveyed to the wife by deed dated on the 10th of March, 1858. There is no allegation of a tender of the balance of the purchase money to the wife nor of the demand of a deed from her. There is an allegation in the bill that the complainant was ready to pay the balance of the purchase money; that he has frequently applied to the husband, and requested him to execute and deliver a deed according to the terms of the agreement, which he refused to do, but said he would sell to others, but not to the complainant.

Assuming in its fullest extent the doctrine, that a *feme covert* is to be regarded in equity as a *feme sole* with respect to her separate estate, and that she has power to dispose of it at her pleasure, the question remains, will equity enforce the specific performance of her contract for the conveyance of her lands?

It was held by this court, in *Leaycraft* v. *Hedden*, 3 *Green* 512, in accordance with numerous authorities there cited, that liabilities voluntarily incurred by the wife would be charged upon her separate estate, but that she could not by her contract make herself personally liable.

There is no doctrine of the common law better settled than that a married woman can enter into no contract or covenant by which she will be personally bound. *Leaycraft*

v. *Hedden*, 3 *Green's Ch. R.* 552; *Jackson* v. *Vanderheyden*, 17 *Johns. R.* 167.

This contract it is admitted could not be enforced in a court of common law. No damages could be recovered against her or enforced against her separate estate for its violation.

The disability of a *feme covert* to enter into contracts has been relaxed by our law in specified cases.

She may, by deed executed and acknowledged pursuant to the statute, convey real estate and bar her right of dower; and by the act of March 20th, 1857, (*Pamph. L.* 485) any married woman of full age who joins with her husband in executing a deed of lands, or any estate therein, may covenant as to the title of said lands, or against encumbrances thereon, or in warranting the same; and such covenants shall have the same force and effect against her and all persons claiming under her as if she were a *feme sole*.

This act furnishes the strongest legislative construction of the act of 1852, "for the better securing the property of married women," *viz.* that it does not by necessary implication vest in the married woman the power of disposing of her real estate or of making contracts in regard to it.

"Though a wife may convey her estate by deed, she will not be bound by a covenant or agreement to convey her estate. The agreement by a *feme covert*, with the assent of her husband, for a sale of her real estate is absolutely void at law, and the courts of equity never enforce such a contract against her." 4 *Kent's Com.* 156; *Martin* v. *Dwelly*, 6 *Wend.* 9; 5 *Day* 496; *Butler et al.* v. *Buckingham*, 2 *Jac. & Walk.* 412; *Mad.* 261.

The statute provides that a married woman shall convey her lands only by joining with her husband in a conveyance, and by an acknowledgment, upon a private examination apart from her husband, that the deed was executed freely without any fear, threat, or compulsion.

But what protection will the statute afford if a court of equity will compel the wife against her will to execute a deed in performance of a contract made at the instigation or upon the compulsion of her husband in the presence of the purchaser alone ?

The *ex parte* evidence on the part of the complainant in this very case exhibits strikingly the danger to which the wife would unavoidably be exposed by the adoption of this doctrine of being stripped of her property at the instance of her husband without her full consent.

The deed was executed by the wife in the presence of her husband and of the agent of the purchaser. The agent testifies that upon his offer being made the wife said, "No, I can't take it." She added, "I have authorized my husband to act as my agent, and I don't know that I have anything to say. But if he consents I would rather not sell the place, but he can do as he pleases." The whole consideration paid on account of the purchase was paid to the husband, as agent of the wife.

It is obvious that if a contract thus entered into by a married woman is to be specifically enforced in equity the statute, so far from operating, as its title imports, "for the better securing the property of married women" will strip them of all the protection with which the jealousy of the common law guarded their rights against the authority and control of the husband. She will in fact be in a more unprotected condition against the control of her husband in regard to her separate property than she is in regard to her estate in the property of her husband.

This very question was decided in this court, more than a quarter of a century ago, in the case of *Wooden* v. *Morris and Wife*, 2 *Green's Ch. R.* 65. The complainant is not entitled to a decree for a specific performance.

But though equity will not decree the specific performance of a contract entered into by a married woman for the sale of her estate, it will charge her separate property with the repayment of money advanced to the wife at

her instance and for her benefit or on account of her estate. *Norton* v. *Turvill*, 2 *P. W.* 144; *Greatly* v. *Noble*, 3 *Mad.* 49; *Stuart* v. *Kirkwall*, 3 *Mad.* 200.

It appears from the evidence, that in pursuance of the contract made with the wife, the sum of $550 was advanced by the complainant to the wife, or to her husband as her agent, on account of the purchase money. Having refused to execute the contract there can be no equity in her retaining the purchase money so advanced upon her contract.

She is in equity as much bound to repay the sum thus advanced as though she had given her bond or note for the repayment of the money.