## COSTER *a.* ISAACS.

*New York Superior Court ; General Term, May,* 1863.

MARRIED WOMAN.—CONTRACTS IN HER SEPARATE BUSINESS.—
ESTOPPEL.—PLEADING.

A married woman, who carries on a separate business,—as she is allowed to do by
Laws of 1860, 157, ch. 90, § 2,—and who purchases goods for the business, and
uses them therein, is liable in an action for the price of such goods.

So, if she leases a store for a business conducted by her, on her separate account,
and uses it for that purpose, she is liable for the rent.

*It seems,* that a false representation by a married woman, carrying on a separate bus-
iness, that she was making a contract,—*e. g.,* hiring a store,—for the uses of
such business, would render her liable for the stipulated price.

An averment in the complaint, that the defendant, a married woman who carried
on a separate business, represented at the time of making the contract that it
was for the uses of such business, is sufficient upon demurrer. If the contract
was not in fact for the use of such business, it must be alleged by way of de-
fence.*

---

* In AITKEN *a.* CLARK (*Supreme Ct., First District ; Special Term, May,* 1863), it
was *Held,* 1, That in an action brought to charge the separate estate of a married
woman, when the coverture is alleged in the complaint, a defence that the defend-
ant is a married woman is bad on demurrer, for it sets up no new matter ; 2, That
since the act of 1860 (*Laws of* 1860, 157, ch. 90), a married woman may carry on
trade, and to that end purchase property, and may be held liable for the price
thereof, without proof that she had any separate estate ; and, 3, That in an action
against a married woman to recover the contract price of goods purchased by her
for her separate business, allegations that she was married, or had a separate es-
tate, are not material, and if inserted in the complaint an answer merely denying
these allegations is insufficient.

Demurrer to the answer.

This action was brought by John Aitken and James Miller against Sarah C.
Clark, to recover $840.97, to be levied and collected out of defendant's separate
estate. The complaint alleged that the defendant was a married woman ; that
she had both real and personal property in her own name and right ; that she
was a dress-maker ; and that the plaintiff sold and delivered to her goods on her
sole and separate account, to be used in her business as dress-maker ; and that
the defendant used the same in her business, and promised to pay for the same
out of her separate property ; that she had not paid for the goods ; and asked for
judgment against her separate estate. The answer, omitting the formal parts,
was as follows : " The defendant denies that she is possessed of real or personal
property in the city of New York or elsewhere, her sole and separate property ;

Coster *a.* Isaacs.

Appeal from an order sustaining a demurrer to the complaint.

This action was brought by George W. Coster against Mary Ann Isaacs, to recover the sum of $400, as rent of a store in

and she also denies that she ever promised to pay from her separate estate for the goods and merchandise set forth in said complaint. And, for a further and other defence, she avers that, during the period of time set forth in said complaint, she was and still is the wife of Robert Clark ; that said Robert Clark and this defendant intermarried on the 14th day of September, 1851, and have ever since resided together, and still so reside, as husband and wife, in the city of New York ; that plaintiffs had knowledge and notice thereof."

On this answer as frivolous, judgment had been ordered ; from this order the defendant appealed, and procured a reversal of the order. (15 *Ante*, 319.) Pursuant to leave reserved, plaintiffs now demurred to the answer.

*George R. Thompson,* in support of the demurrer.—I. That the defendant was a married woman is no defence. (*Laws of* 1860, 157, ch. 90 ; Barton *a.* Beer, 35 *Barb.*, 78 ; S. C., 21 *How. Pr.*, 309 ; Klen *a.* Gibney, 24 *Ib.*, 31.)

II. That the defendant has not any separate property is not a defence. (*Laws of* 1862, 849, ch. 460, § 12.) It goes only to the availability of the judgment.

III. The denial that she promised to pay out of her separate estate is immaterial. The consideration went to the direct benefit of her separate estate. (Yale *a.* Dederer, 22 *N. Y.*, 450 ; Owen *a.* Cawley, 36 *Barb.*, 52 ; S. C., 13 *Abbotts' Pr.*, 13 ; 22 *How. Pr.*, 10.)

*William R. Stafford,* opposed.—I. The acts of 1848, 1849, and 1860, have not removed the disabilities of married women, unless for the disposition of their separate property.

II. The intent to charge the wife's separate estate must appear by the contract itself, or the consideration must move directly for the benefit of the separate estate. (Coon *a.* Brook, 21 *Barb.*, 546 ; Dickerman *a.* Abrahams, *Ib.*, 551 : Switzer *a.* Valentine, 4 *Duer*, 96 ; Sherman *a.* Elder, 1 *Hilt.*, 476 ; Yale *a.* Dederer, 18 *N. Y.*, 265 ; 22 *Ib.*, 450.)

III. The acts of 1862 do not enlarge her powers to make contracts relative to personal property, but simply the remedy. (*Laws of* 1862, 343, ch. 172 ; *Ib.*, 849, ch. 460, § 12.)

MULLIN, J.—I am of opinion that the second defence, as it is called, constitutes no defence to the action. Section 149 provides that the answer must contain, first, a general or specific denial of each material allegation of the complaint controverted by the defendant, &c. ; second, a statement of any new matter constituting a defence, &c.

The second defence sets up no new matter. It merely alleges a fact which is charged in the complaint, and which the plaintiffs must prove in order to maintain their action.

As to this part of the answer, therefore, there must be judgment for the plaintiffs on the demurrer.

As to the first defence in the answer there is more difficulty. The denials, in form, constitute an answer under the first subdivision of section 149, above cited.

New York city, to be collected out of the separate estate of the defendant, a married woman. The allegations of the complaint, omitting the averments of the lease, entry, and occupation, and non-payment of rent, were as follows: "That on and

Are the allegations of the complaint material which are denied by the answer? This is one necessary ingredient in a good answer.

The plaintiffs deny their materiality, because they say the action lies against the defendant, although she is not possessed of any separate estate, and has never promised to pay for the goods out of such estate. It is quite clear that such was not the view of the case entertained by the counsel who drew the complaint. It is framed to charge her separate estate with the debt, and not upon the theory that she was liable as a feme sole.

But if this view of the case is right, the allegations denied by the defendant are immaterial, and the answer is demurrable.

It was repeatedly held, prior to the act of 1860,—entitled, an Act concerning the Rights and Liabilities of Husband and Wife (*Laws of* 1860, 157, ch. 90),—that a married woman was not liable for property purchased by her on credit, unless she charged her separate estate with the debt, or unless it was purchased for the benefit of such estate, and then her separate estate alone was liable. (Gates *a.* Brower, 9 *N. Y.*, 205; Yale *a.* Dederer, 18 *Ib.*, 265; and cases cited in *Abbotts' Dig.*, tit. Husband & Wife, viii., § 139; same tit., ix., § 176.)

It was further held that, if having no separate estate, or having failed to charge it, the husband was liable if the property came to his use; but if not, the contract of purchase was void, and the vendor might follow and reclaim the property. (Barton *a.* Beer, 35 *Barb.*, 78.)

The theory was, that if the property purchased by the wife came to the use of the husband, she might be considered as his agent; but if it did not come to his possession or use, then the vendor having sold to a person believed to be acting as the agent of another when she was not, and was not in law capable of binding herself, no title had passed.

The act of 1860, above cited, contains no provision in terms authorizing a married woman to purchase property, and bind herself personally for the price.

The eighth section of that act provides, " that no bargain or contract, made by any married woman in respect to her sole and separate property, or any property which may hereafter come to her, by descent, devise, bequest, or gift of any person except her husband, and no bargain or contract entered into by any married woman in or about the carrying on of any trade or business under the statutes of this State, shall be binding on her husband, or render him or his property in any way liable therefor.

It was held in Barton *a.* Beer (*supra*) that under this section married women were authorized to carry on trade, and to that end to purchase property, and give notes therefor. In that case it was admitted that the cigars were the separate property of the wife, doing away, as the court held, with the difficulties that would have stood in the plaintiff's way by reason of the sale to her in 1859, when she could not bind herself by an executory contract.

The court treated the wife as purchasing the property anew in 1860, after the act of that year relating to the rights of married women had become a law, and hence her note for the price became operative.

The purchase in this case was after the act of 1860 took effect, and, within the

prior to the 26th day of February, 1861, the defendant, Mary Ann Isaacs, was, and she has ever since been, a married woman, being the wife of one Lyon Isaacs, of the city of New York; and that she was, at the date aforesaid, the legal owner of a separate property, consisting in part of a freehold estate in certain lands in the county of Kings, and in the county of Schoharie, in the State of New York, acquired and held by her under and in pursuance of the laws of the State of New York, in respect to the separate estates of married women; and that the said Mary Ann Isaacs, at and prior to the date aforesaid, was engaged in carrying on a millinery business in the city of New York, in her individual name, pursuant to the laws in such case made and provided; and, upon making application for the premises hereinafter described, represented herself to be a married woman, and that (her husband had been unfortunate in business, and was unable to do any thing himself, and that she carried on the millinery business in her own name, and upon her sole and separate account, and wanted the premises for such business; that the said defendant is possessed of a sole and separate property, and is the lawful owner of the real estate hereinbefore mentioned, and holds the same as her sole and separate estate."

To this complaint the defendant demurred. The demurrer was sustained at special term, before Mr. Justice Moncrief, and plaintiff appealed.

*Benjamin T. Kissam,* for the appellant.—I. The act of 1849 (*Laws of* 1849, 528, ch. 375, § 3) empowered the defendant to take and to hold the premises to her sole and separate use. (Darby *a.* Callaghan, 16 *N. Y.,* 71.) And the act further provides that she shall take and hold in the same manner, and with like effect, as if she were unmarried. One of the effects of taking and holding by an unmarried woman, is a liability for the payment of rent. Without any agreement, the law implies

---

principle of Barton *a.* Beer, must be binding on the wife. So that it is not necessary, to entitle the plaintiff to recover, to prove that the plaintiff charged her separate estate. And it was wholly immaterial whether she was married or had separate estate.

There must be judgment for the plaintiff on the demurrer, with leave to defendant to amend on payment of costs.

a promise to pay for the use and occupation. The defendant then, so far as the estate acquired by her under the agreement in the complaint is concerned, is to be treated as a feme sole. (Yale *a.* Dederer, 18 *N. Y.*, 265, 271.)

II. The written engagement of the defendant having been entered into on her own account, for her own business, and her own benefit, her separate estate should be applied to the pay- ment of the consideration for the use and enjoyment of the plaintiff's premises. (Yale *a.* Dederer, 18 *N. Y.*, 265, 273.) Such a consideration was contemplated in the same case (22 *Ib.*, 450, 461): "the consideration must be one going to the direct benefit of the estate." (Taylor *a.* Glenny, 22 *How. Pr.*, 240.)

III. The defendant is also liable under the act of 1860 (*Laws of* 1860, ch. 90),—authorizing a married woman to carry on any trade or business on her sole and separate account. (Bar- ton *a.* Beer, 35 *Barb.*, 78; S. C., 21 *How. Pr.*, 309; Klen *a.* Gibney, 24 *Ib.*, 31.)

IV. This action is rightly brought against the wife only. (*Code,* § 114; *Laws of* 1860, 158, ch. 90, §§ 7, 8; Taylor *a.* Glenny, 22 *How. Pr.*, 240; Barton *a.* Beer, 35 *Barb.*, 78.) And judgment may be given against her for costs and damages, and executions issue. (*Code*, §§ 274, 287.)

*Thomas D. Sherwood,* for the respondent.—I. The complaint does not set forth with sufficient particularity the separate property of the defendant, or its nature, situation, or value; without this, no proper decree could be made for its sale. (Coon *a.* Brook, 21 *Barb.*, 546, 548.)

II. No personal judgment can be recovered against a married woman for a debt contracted by her during coverture. The laws of 1848 and 1849 do not enable femes covert to contract debts or make notes not allowable prior to those statutes. (Coon *a.* Brook, 21 *Barb.*, 546, and cases cited; Morgan *a.* An- driot, 2 *Hilt.*, 431; Yale *a.* Dederer, 21 *Barb.*, 286; Switzer *a.* Valentine, 4 *Duer*, 96; Cobine *a.* St. John, 12 *How. Pr.*, 333.) The statute of 1860 has not relieved femes covert of their prior common-law disabilities to bind themselves by their contracts at large. (Yale *a.* Dederer, 22 *N. Y.*, 450, 460.) The debt of a married woman can only be enforced in equity, and as a charge

Coster *a.* Isaacs.

upon her separate estate. (Dickerman *a.* Abrahams, 21 *Barb.*, 551 ; Coon *a.* Brook, *Ib.*, 546.)

III. The complaint does not set forth sufficient facts to entitle the plaintiff to a judgment, charging the debt of defendant upon her separate estate. 1. The complaint does not allege that the debt was contracted in any relation to the defendant's separate estate. 2. It does not allege that the defendant charged or intended to charge her separate estate; it does not state that there was stated in the lease or contract itself an intention of defendant to charge her separate estate. 3. It does not appear that the consideration was one going to the direct benefit of the estate itself. All of these allegations, and proof thereof, are necessary to so charge the estate. (Yale *a.* Deder-er, 22 *N. Y.*, 450; Dickerson *a.* Abrahams, 21 *Barb.*, 551; Owen *a.* Cawley, 36 *Ib.*, 52; S. C., 13 *Abbotts' Pr.*, 13.)

By the Court.—Bosworth, Ch. J.—By chapter 90 of the Laws of 1860, a married woman may " carry on any trade or business . . . on her sole and separate account;" and " the earn-ings," thereof, will be hers, and " may be used and invested by her in her own name." (*Laws of* 1860, 157, ch. 90, § 2.) She may " sue and be sued in all matters having relation to her property . . . . . in the same manner as if she were sole." (*Ib.*, 158, § 7.) An execution may issue against her, and direct the levy and collection of the amount " of the judgment against her from her separate property, and not otherwise." (*Code*, § 287.)

Hence, if she in fact carry on business on her own account, and purchase goods for and use them in the business, it would seem to follow that she can be sued for goods sold and deliv-ered, and a recovery be had against her, and that such judg-ment may be collected. Whether her business is profitable or not, or will benefit or waste her property, is immaterial. She has attained the dignity and possesses the capacity of every trader of an age to make a valid contract, and must pay for her purchases, or submit to a judgment, if sued.

So, too, if she leases a store for a business conducted by her on her separate account, and uses it for that purpose, she must pay the stipulated rent, whether the business be wise or foolish, or likely to be profitable or ruinous.

Coster *a.* Isaacs.

The only question then is, whether, when she buys on a representation that the goods are to be used in her separate business, or hires a store representing that it is to be so used, a vendor or lessor, in a suit to recover the price of his goods or the rent due, must allege that the one and the other were in fact actually used in her separate business.

The complaint states that the defendant hired the store for a year, and that she entered and occupied the premises, and represented when she took the lease "that she carried on the millinery business in her own name, and upon her sole and separate account, and wanted the premises for such business." And it also alleges that she was at the time in fact carrying on such business.

, If the complaint had further alleged that it was true, in fact, that she not only carried on this business on her sole and separate account, but that she in fact used the demised premises as the place of prosecuting such business, I should consider it clearly sufficient.

It is not to be presumed that a married woman, having a separate property, would misrepresent or practise other deceit to hire premises or purchase goods. And, if inadvertently she should be guilty of such an indiscretion, I do not see that it follows that one relying on her good faith may not press his suit to a judgment against her.

If she did not in fact use the premises in carrying on her separate business, and if that fact should be a defence, I think she must allege and prove it.

I think the complaint sufficient, under the act of 1860, and that the order appealed from should be reversed.

MONCRIEF, J., concurred.

ROBERTSON, J.—It may readily be conceded that under the act for increasing and extending the liabilities of married women, passed in 1860 (*Laws of* 1860, 157), that if a feme covert purchase goods or hire a store to carry on a business in which she is engaged, she may make herself and her estate responsible for the value of such goods or the rent of such store, whether such business, purchase, or hiring be profitable or not. So, too, if she make any contract in relation to and for

the benefit of her separate estate, that estate is liable, whether the contract be a judicious one or not.

It does not, however, follow from such liability that every contract made by a married woman who happens to own separate estate, or is engaged in a trade, is binding on her estate or herself; and those which are not, certainly cannot be made binding by any form of contract, or any act or declaration of hers, except an absolute transfer of her property. If they could, it would be very easy for a married woman, every time she made a contract not relating to her trade or estate, to bind her estate by signing a written declaration that such contract did so relate. Though an infant can make a contract for necessaries, and a married woman can bind her husband as his agent for articles necessary and suitable for her support, where he has made no provision for her, it has never yet been held that such infant could bind himself by a contract for superfluities by representing them to be necessaries, or that such married woman could bind her husband by representing, untruly, goods bought by her to be indispensable and proper for her support. An estoppel cannot be raised against a person *non sui juris* (McCoon *a.* Smith, 3 *Hill*, 147), except where it operates to sustain a conveyance. (Martin *a.* Dwelly, 6 *Wend.*, 9; Gout *a.* Townsend, 2 *Den.*, 336.)

Whether a married woman can make contracts of any number or extent for the purchase of goods, provided they be such as could be used in the trade in which she is engaged, or can hire any number of stores in which to carry it on, is not necessary to be decided in this case, as it is not alleged in the complaint that the premises hired were either useful, necessary, or proper in carrying on the trade in which the defendant was engaged, or was employed in it. It is true, the complaint states that the defendant occupied the premises hired by her, but not for what purpose, and also that she said when she got the lease that she carried on a certain business, and that she wanted the premises for carrying it on there. But this, at most, would be mere evidence of the facts represented, and not equivalent to an averment of the facts themselves.

Possibly, an averment that the defendant used the premises hired by her as the place of prosecuting her business might be sustained as equivalent to an allegation that it was necessary

and proper for it, although it would be at best but evidence of it. If it were conclusive, a married woman might hire a very large building, and, although she used only part for her trade, could make her estate liable for the rent of the whole.

I do not think the statute of 1860 meant to relieve entirely married women from the disability of marriage in making contracts, and make all their contracts good, otherwise it would not have been so minute and exact in its provisions. Parties dealing with them were evidently intended still to be required to use some caution in ascertaining that a contract entered into by them was necessary and proper for the carrying on of their trade or benefiting their estate. I do not see, if a married woman can bind herself for articles not necessary for her trade or estate by representing that they are, why she should not equally be able to do so by representing herself to be unmarried. If those dealing with them are not bound to ascertain whether they are or not in the latter case, they should equally not be in the other.

I therefore think there is great reason why a married woman should not be held liable for a contract not necessary or proper to carry on any trade in which she is engaged, or for the improvement of her estate, by her merely stating that such contract is so. This would break down the last barrier between the disability of a married woman and the ability of a feme sole, by merely requiring a written representation from the married woman.

The law, however, does not therefore allow even married women to escape the consequences of practising an imposition; they, as well as infants, may be sued for frauds perpetrated by misrepresentations, as well as any other torts, to the extent of the damage inflicted. It is true they may not be subject to arrest, and the only remedy of the party injured may be, as in former cases of torts, against the wife and husband jointly. The statute of 1860 does not subject a married woman's separate estate to liability for torts. The provision of the seventh section was intended only to provide for the cases in which her property was liable under the act (158), and the 287th section of the Code was only intended to provide for the mode of enforcing judgments where a married woman was liable under the act of 1860.

But if this were an action for obtaining goods by deceit, the complaint is not sufficient; it does not allege the falsity of the representations, the defendant's knowledge of them, or the plaintiff's reliance upon the representation in letting the premises, and is therefore defective.

In this case, the complaint contains an entirely unnecessary averment as to the ownership of real estate by the defendant; it does not appear that the contract sued upon was at all intended to benefit such estate; and if not, it would not be a charge upon it. (Yale *a.* Dederer, 22 *N. Y.*, 460.)

I think the complaint insufficient as it stands, and that the order appealed from should be affirmed, with costs, with liberty to the plaintiff to amend in twenty days, upon payment of costs.

Order reversed.

---

THE PEOPLE *on rel.* COOK *a.* THE BOARD OF POLICE.

*Supreme Court, First District; Special Term, March,* 1863.
*Again, General Term, September,* 1863.

COMMON-LAW CERTIORARI.—FORM AND PLACE OF RETURN.—
PLEADING UNDER PENAL STATUTE.—NEGATIVING EXCEPTION.
—EFFECT OF REPEAL OF LAW.

The return to a common-law certiorari does not properly embrace the evidence; and though this be in fact returned, the court will not re-examine the merits.
To justify a conviction on a quasi criminal charge, even the possibility that the accused was within an exception contained in the body of the rule or law under which the conviction is had, must be negatived.
It is otherwise if the exception is contained, not in the body of the rule or law, but in a separate section.
The repeal of a law imposing a penalty determines a prosecution for its violation.

---

A common-law certiorari must be made returnable at general term.

I. *March*, 1863.—Common-law certiorari.